Carter vs. Davis et al.—Statement of Case.

FARISH CARTER, APPELLANT, vs. W. G. M. DAVIS, A. G. SEMMES AND OTHERS, APPELLEES.

1. A party has his standing in a court of equity so long as he is interested in contesting the amount to be decreed against him in favor of collateral parties, notwithstanding he may have settled with the principal creditor during the progress and pendency of the suit.

2. In a conflict between the lien of attorneys upon a judgment recovered by them and the equitable setts-off of the judgment debtor, the Court will not undertake to determine arbitrarily what amount of professional aid was necessary to prosecute the suit to judgment. Yet it will interfere so far as to confine the claims of the attorneys for services within the limits of a just and reasonable compensation.

3. An attorney has a lien upon a judgment, for his services in obtaining the same, superior to any equitable sets-off of the judgment debtor. The case of Carter vs. Bennett (Florida Reports) noticed and approved.

This case was decided at Jacksonville.

Appeal from a decree of a Circuit Court for Leon county, in chancery.

A. T. Bennett had recovered a judgment, in an action of trover in the Circuit Court for Franklin county, against Farish Carter, for about twenty thousand dollars. Carter appealed from said judgment to the Supreme Court of this State, and the judgment having been affirmed, he appealed therefrom to the Supreme Court of the United States. A. G. Semmes, W. G. M. Davis, Finley & Campbell and Thomas Baltzell were at different times engaged as the attorneys and counsel for Bennett in the Circuit Court; W. G. M. Davis and Finley & Campbell were likewise engaged in the Supreme Court of the State, and W. G. M. Davis in the Supreme Court of the United States.

Afterwards, Farish Carter filed his bill of complaint against Bennett and Robert May, to whom Bennett had

assigned his said judgment in trover, and against Davis, Semmes, Baltzell and Finley & Campbell, as attorneys of Bennett, who claimed a lien for their fees upon the said judgment, in which bill Carter set up certain equitable claims against Bennett, which he charged should be allowed against said judgment, and also alleged that the judgment in trover was inequitable and should be perpetually enjoined. On motion of counsel for Carter, an injunction was granted restraining all proceedings on the judgment, and the execution which issued thereon, until the further order of the Court. On the coming in of the answer of Bennett, the Circuit Court dissolved the injunction, and Carter appealed to the Supreme Court. At the January term, 1855, the Supreme Court decided that the order of the Circuit Court dissolving the injunction was erroneous, and ordered the injunction to be reinstated and remanded the cause for further action to the Court below. It was also determined by the Supreme Court, that the attorneys of Bennett held a lien upon the judgment in trover superior to the equities set up by Carter, and the Court directed the Court below to ascertain the extent of the lien which should be a reasonable and adequate compensation.

After the cause was remanded to the Supreme Court, Carter compromised and settled the case with Robert May, the assignee of the judgment and the agent of Bennett, by the payment of an amount which was received by May in full satisfaction, with a stipulation that the said satisfaction was not to release any lien which the attorneys of Bennett in said trover suit might have upon said judgment and which the Court of Chancery might decree to be properly chargeable to Farish Carter, either at law or in equity, and also declaring that the object of the covenant was not to create a liability on the part of

said Carter to pay the attorneys of Bennett, if no such liability otherwise exists in law or equity.

The only remaining question is as to the fees claimed by the attorneys of Bennett, as liens upon the said judgment.

A. T. Bennett, in his answer, says, that the fees due A. G. Semmes, as one of his counsel in the said suit in trover, is the sum of five thousand dollars, and the fees due W. G. M. Davis, defendant's other counsel in said case, is the sum of three thousand seven hundred dollars, which said fees were due before the filing of complainant's bill of complaint.

George S. Hawkins, a witness examined by complainant, testified that he knew of the case of Bennett vs. Carter in trover; should suppose ten per cent. on the amount of the verdict, for services at the trial, a fair compensation divided between two counsel, or as many as might have been employed; the verdict was within a fraction of $20,000; does not know who argued the case at the trial; believes Davis and Finley argued it in the Supreme Court; ten per cent., he thinks, would also be a fair compensation for services in the Supreme Court; thinks the gross amount of twenty per cent. about fair, on the hypothesis that there was no contract, and taking the circumstances of the case into consideration; it is not usual for attorneys to charge the same amount when they are employed with other counsel, as when they are employed to take the whole responsibility of the case, alone; witness believes Judge Baltzell ceased to act as attorney for Bennett in the spring of 1845, when he was elected judge; Judge Semmes acted as Bennett's counsel until he was elected judge; believes that Davis' employment commenced at the trial (or just before) in the Circuit Court; Bennett, during the time and pendency of the suit, was re-

186 SUPREME COURT.

Carter vs. Davis et al.—Statement of Case.

puted insolvent; his circumstances were embarrassed; believes his counsel looked to the fund recovered as the one on which they depended for their remuneration; witness was employed with the late W. H. Brockenbrough as attorney in the case for Carter; witness merely filed pleas before he went upon the bench; Carter agreed to pay seven hundred dollars for this and other cases, which was all we were to look to; R. J. Moses appeared at the trial for Carter, who, witness believes, received five hundred dollars; at any rate, he thinks five thousand dollars, in the aggregate, as a full and adequate compensation for services in both Courts.

*Cross-examined.*—Was not present at the trial. Did not have any intimate knowledge of the case after he became judge. Does not know the amount of labor performed, but has an idea of the nature and character of that labor. The knowledge he has is derived from the record, conversations with counsel and others, and from supposed analogies existing between this and other cases. The case he considered difficult, and he knew of the great labor bestowed by Judge Semmes. There was great prejudice and feeling against Bennett at the time the suit was instituted, but a most prompt reaction took place before the trial. On the hypothesis that there existed a prejudice and feeling against Bennett, and of the disagreeable nature of the litigation between Carter and Bennett and the difficulty of sustaining the claim of Bennett, witness supposes a lawyer's services are entitled to higher compensation; as where there is much feeling and disagreeable incidents connected with the suit, in the same ratio should lawyers be paid. Witness is persuaded that the suit was conducted by the counsel for Bennett with adroitness, skill and ability, and most was made of a case, whatever its legal claims to success, morally it had none, in the opin-

Carter vs. Davis et al.—Statement of Case.

ion of witness. If witness is correct, he supposes, owing to the disagreeable duty of advocating such a suit, counsel should be paid more liberally than for an ordinary suit in trover. The counsel employed by Carter were all eminent as lawyers, and witness deems this fact as one enhancing the value of the services of Bennett's counsel. Judge Baltzell was counsel for Bennett in the case of the Georgia Railroad and Banking Company, afterwards amended at the instance of Carter. The entire responsibility of the defence seemed to rest on Judge Baltzell. The services of Judge Baltzell in the case alluded to were of a difficult character embracing delicate points of law.

Caraway Smith, another witness examined by complainant, testified that he knew of the suits of Bennett vs. Carter in trover and of Roberts, Allen & Co. vs. Carter. Witness was engaged with R. J. Moses to conduct the cases in the place of Mr. Brockenbrough, who was sent to Congress, and of Judge Hawkins, then lately elected judge. No fee was stipulated, but witness was paid two hundred and fifty dollars as a retainer. Witness was absent at the trial, otherwise would have charged five hundred dollars more.

Messrs. Semmes & Davis conducted the cases in the Circuit Court. Knows nothing of the Supreme Court. Witness does not know of his own knowledge Thos. Baltzell, J. J. Finley or Finley & Campbell in the case. Cannot say what the services of Semmes & Davis were worth. Thinks if the fee had been certain, two thousand dollars would have paid both of them—if contingent, double the amount. Witness does not think the employment of several attorneys on the same side, according to the usual practice in Florida, justifies a full charge for each as if but one were employed. Witness thinks Ben_ nett was very much embarrassed at the time and could

not have responded to a demand of anything like five thousand dollars.

*Cross-examined.*—Witness says he could have "no personal knowledge" of the whole of the services and labor of Messrs. Semmes & Davis, but is satisfied that they did "yeoman service" in the cause.

Complainant offered in evidence a deposition of Thomas Baltzell, taken in behalf of Bennett in the suit in trover of Bennett vs. Carter, in which said Baltzell, in answer to the third cross-interrogatory, said "he made no express bargain with Bennett, neither for a specified nor a contingent fee. He has received, without knowing or recollecting exactly, about three hundred dollars. In case of success, or a continuance in his causes, would have charged and expected to receive more. *He has now no charge against him.*"

Thomas J. Eppes, who was examined as a witness for defendant, A. G. Semmes, testified that after the decision of the case of Bennett vs. Carter in the Supreme Court, the witness had a conversation with Bennett, and among other subjects of conversation the said case was mentioned. Bennett spoke of the services of A. G. Semmes, his attorney, and characterised them as both laborious and able, and stated that the fee agreed to be paid said Semmes was five thousand dollars, but went on to state in addition that he, Bennett, did not intend to be limited or confined to said amount, but designed paying said Semmes liberally, and without saying more, left the impression upon the mind of the witness that the fee was to exceed the said amount of $5,000, so agreed, as before mentioned, to be paid said Semmes.

W. G. M. Davis, examined as a witness in behalf of defendant, A. G. Semmes, testified that he was in New Orleans in June, 1853, when Bennett showed him a letter from

said Semmes enclosing the account of Semmes for pofessional services in the trover suit of Bennett vs. Carter, and in a variety of other cases and business; that the charge made by said Semmes in his said account for services in said trover suit is the sum of three thousand five hundred dollars, as of the day of the judgment in trover; in addition to which he claimed interest from that day.    Bennett said at the time, (June, 1853,) he thought the charge of itself not too high, but that in connection with the charge of other counsel it would make an aggregate larger than he would like, but added that he was willing to pay it.    After Carter's present bill was filed, Bennett and Semmes calculated the interest on the $3500 00, and added it to the principal, and then in the answer of Bennett the approximate result was put down as being five thousand dollars. Witness was well acquainted with the labor and services of Semmes in the trover suit, which were constant and arduous for a period of near six years.    During a great part of said time, Bennett was in almost daily communication with Semmes about the case, and scarcely left him at leisure at any time without talking about the case and its attendant circumstances.    Semmes bestowed great labor and research in the preparation of the case.    He had to hunt up witnesses out of and in the State, prepare and send off interrogatories, and argue matters as to testimony, continuances, &c.    He was opposed by the ablest counsel in the State, and had also to encounter, for a great part of the time, a strong prejudice against Bennett and his claim, which prevailed in Apalachicola.    In consideration of these facts, and that he was not paid for his labor as it was performed, year by year, and made his charge after the recovery, witness thinks the charge made by said Semmes for his services a fair and proper one.

As to Judge Finley's services, witness knows what they

were and deems his charge of five hundred dollars in the Circuit Court, and five hundred dollars in the Supreme Court, a fair and proper charge.

The said W. G. M. Davis being also examined as a witness in behalf of Thomas Baltzell, testified that in his opinion the sum of five hundred dollars is a proper charge to be made in such a case as that of Bennett vs. Carter, as a retaining fee, which of course covers all the service, responsibility, and so forth, up to and at the time of the bringing of the suit. If he, witness, is asked whether such service if charged by Judge Baltzell as a retaining fee is a fair charge, he answers, yes!

Defendant, Semmes, read in evidence a letter from Bennett to him, dated 6th January, 1853, in which he acknowledges the receipt of Semmes' account, and adds, "Notwithstanding I am fully aware that fees are due you and ought to have been paid long since, and it is a mortifying circumstance to me that my situation has compelled me to let them lay so long." Also, " you are fully advised as to the situation of the Carter claim, out of which I hoped to get something to pay you up in full. I did not much expect (notwithstanding it has rested so long,) that you would call on me just at this time, knowing as you do my situation and chances for getting something from Carter. However, I will make every effort in my power—do all I can with the little start I have got, and hope, if no bad luck befalls me, to be able at no distant day to pay you up every cent."

Defendant, Semmes, also read in evidence another letter from Bennett, dated 10th June, 1853, in which he states, " I regret that you do not set Mr. Davis' fee, as you employed him and are better capable than I am of judging of the value of his services. I hoped you would fix them. I believe he is desirous that you should do so. However, if

you feel any delicacy about it, I will not insist on your doing so at the risk of incurring his ill will. From what he says, I take it, that he expects twenty five hundred dollars, which, added to yours and Maj. Finley's, will make a round fee of eight thousand dollars. This sum having to be provided for, would leave a mere pittance out of my compromise I am likely to get from Carter for any interest I may have in the suits, or any money advanced towards expenses, fees, to Baltzell, Westcott, &c., advanced at the commencement of the suit. These fees are doubtless reasonable. I am not disposed to complain, but in candor to you as my friend, I must say (as you request me to give my views,) that the aggregate is more than I expected. I admit my incompetency to judge of professional services. I can only judge of what the effect will be on the amount of the claim."

Defendant, W. G. M. Davis, examined A. G. Semmes as a witness, who testified that he knew of the services rendered by defendant Davis, as attorney for Bennett in the case of Bennett vs. Carter, and Roberts, Allen & Co. vs. Carter. The said Davis had been consulted by Bennett about said cases before the trial in the Circuit Court. He was not present at the trial, but he arrived in time to argue the motion for a new trial and in arrest of judgment. The motions for new trial and in arrest of judgment were elaborately argued. Knows that Davis rendered services to Bennett in the Supreme Court, in said trover suit. Said services consisted in consultations and preparation for the argument of said case long before the trial thereof in the Supreme Court, and in the argument of the same for several days in said Court. Knows of said Davis going on to Washington City for the purpose of arguing said cause in the Supreme Court of the United States. Though he, witness, was not present, he has no reason to doubt but that

said Davis did argue the same. Heard Bennett say he had employed Davis to go to Washington for that purpose, and heard him say afterwards that Davis had argued it. Before the argument of the trover suit in the Supreme Court, Davis wrote to Bennett in reference to the compensation he should claim for attending to said case, claiming two thousand dollars. Bennett did not conclude to allow it until after the trial in the Supreme Court was over and he had an opportunity of judging of the value of Davis' services, when he was satisfied with the charge made by Davis. Witness had several conversations with Bennett in relation to fees to be allowed his counsel. In these conversations Bennett stated that he had agreed to give Davis twelve hundred dollars to argue said case in the Supreme Court of the United States. In the opinion of witness, Davis was entitled to five hundred dollars for the services he rendered in the Circuit Court, two thousand dollars for his services in the Supreme Court of Florida, and twelve hundred dollars for his services in the Supreme Court of the United States.

D. P. Hogue, examined as a witness by defendant, Davis, testified that he was aware of the services of W. G. M. Davis in the Supreme Court of the State, in the case of Bennett vs. Carter, and is of the opinion that his own individual claim, unconnected with the claims of others, for fees, considering the magnitude, intricacies and difficulties of the questions involved, and the ability of Mr. Davis in the management of the cause, as well as the amount in controversy, is not too large. Knows nothing of the claim for fees at Washington.

The Court below decreed that A. G. Semmes was entitled to five thousand dollars with interest from 10th June, 1853; that William G. M. Davis was entitled to three thousand seven hundred dollars, with interest on five hun-

dred dollars of said amount from December, 1848, and inter-est on two thousand five hundred dollars of said amount, from 31st July, 1851, and interest on the balance of twelve hundred dollars from the 28th February, 1854; that Thos. Baltzell was entitled to the sum of five hundred dollars, and that Finley & Campbell were entitled to one thousand dollars, and that as to said sums the said attorneys were en-titled to a lien upon the amount recovered in the judgment of Bennett vs. Carter in trover, in preference to the equit-able claims set forth by Carter in his bill of complaint. From this decree Carter appealed.

*James T. Archer* and *R. J. Moses* for appellant.

*W. G. M. Davis* and *W. A. Forward* for appellees.

Hon. B. A. PUTNAM, Judge of the Circuit Court of the Eastern Circuit, who sat in this cause in place of Baltzell, C. J., who was disqualified from interest, deliv-ered the opinion of the Court.

Appeal from the Circuit Court of Leon county, sitting as a Court of Chancery.

A. T. Bennett had obtained in the Circuit Court for the county of Franklin a verdict and judgment thereon in an action of trover against Farish Carter, for the sum of $20,000, or within a fraction of that amount; and in this suit counsel were employed by Bennett, among whom were A. G. Semmes, W. G. M. Davis, Finley & Campbell and Thomas Baltzell, all of whom were engaged in the case in the Circuit Court, some of them in the Supreme Court of the State, on the appeal from the Circuit Court, and W. G. M. Davis in the Supreme Court of the United States, to which Court the case had been carried also by ap-

peal. This suit grew out of transactions to which it
is now unneccessary to refer, and which are irrelevant
to the matters submitted to this Court for considera-
tion. Subsequent to the obtainment of the said judgment
by Bennett, Carter filed a bill against him, Robert May,
assignee of the judgment and W. G. M. Davis and A. G.
Semmes, attorneys of Bennett in the prosecution of said
suit in trover, and who severally claimed to have a lien
for their fees upon the judgment rendered therein superior
to the alleged equities of Carter, and to be allowed the
same out of said judgment. Carter in his bill set up cer-
tain equitable claims against Bennett, which were prayed
to be considered and allowed. On motion of counsel in
behalf of Carter, and after argument thereon, an injunc-
tion was awarded by the Court enjoining and restraining
all proceedings upon the judgments and executions
mentioned in the bill of complaint in favor of Ben-
nett and others. Afterwards, and on the coming in of the
answer of Bennett, the Court dissolved the injunction, and
Carter prayed an appeal to the Supreme Court. The ap-
peal was considered and the grounds thereof argued at a
term held by the Supreme Court in 1855, at Tallahassee ;
and the Court held the order of the Circuit Court dissolv-
ing the injunction to be erroneous, ordered the injunction to
be reinstated, and remanded the cause to the Circuit Court
for further action.

The equities set up by Carter in his bill against said
judgment of Bennett, came in conflict with the equitable
lien claimed by Bennett's attorneys upon the same for pro-
fessional services rendered by them in obtaining said judg-
ment; and the Supreme Court, besides reversing the order
of the Circuit Court dissolving said injunction, proceeded
further to enquire into the said equities so presented and
urged by Carter on the one side, and by Bennett's attor-

neys on the other; and held that the attorneys not only had a lien for their professional services upon said judgment, but that said lien constituted in their behalf a priority, but because the extent of that lien, or the value of the services, did not sufficiently and satisfactorily appear from any evidence in their possession, the Supreme Court deemed it necessary that an enquiry and investigation should be had in relation thereto, and the extent of the attorneys' lien ascertained, which the Court held should be reasonable and adequate compensation; and thus they prescribed a " *quantum meruit*" as the basis for the ascertainment of the extent of said lien.

The Circuit Court, in obedience to the mandate of the Supreme Court, proceeded to make inquiry and investigation required to ascertain the extent of the attorneys' lien upon the judgment; and witnesses were examined and their depositions submitted. The cause coming on to be further heard before the Circuit Court for Leon County, on said bill, answers, and depositions filed as aforesaid, and after hearing the same and argument of counsel therein, the Circuit Court, on the 29th day of January, 1856, rendered a decree, and thereby ordered and adjudged, that the following named attorneys of Bennett, to wit: A. G. Semmes, was entitled to $5000, with interest from the 10th day of June, 1853, for his services rendered in said action at law; W. G. M. Davis was entitled to the sum of $3,700 with interest to be computed on $500 of said sum from the — of December, 1848, and interest upon the balance of $2000 of said amount from the 31st day of July, 1851, and interest upon the balance of $1200 from the 28th day of February, 1854; and that Thomas Baltzell was entitled to the sum of $500 for his services in said cause, and said Finley & Campbell were entitled to $1000 for their services in said cause.

And the Court further decreed, that as to the said sums so adjudged to be due to said attorneys for their services rendered in said cause, they were entitled to a lien upon the amount rendered in said judgment, in preference to the equitable demands by said complainant Carter in his said bill set forth. And the Circuit Court further decreed, that the complainant should pay into Court a sum sufficient to cover the amount of principal and interest decreed to be paid to Bennett's attorneys.

From this decree of the Circuit Court an appeal has been taken by complainant Carter to this Court, and the following are the grounds assigned for the same:

1st. The chancellor erred in considering the alleged contracts with Bennett the criteria or basis of the equity he was to administer, without reference to the question of the reasonableness of the alleged contracts.

2d. The Court erred in considering and adopting any contract between Bennett and the solicitors not definitely made as to time and manner, that is in writing and before the service was performed.

3d. The Court erred in determining upon the evidence that any contracts were proved.

4th. The Court erred in not adopting the basis of "*quantum meruit*" to determine the fees.

5th. That the sums allowed are exhorbitant.

6th. That four counsel are allowed and separate compensation in one suit for one trial.

7th. The Court erred in determining on the evidence that the solicitors were entitled to any lien, and that the judgment in trover was to be recognized as a valid judgment to the amount of the verdict.

A motion was submitted by counsel for appellees to dismiss this appeal upon the grounds—

1st. That the appellant has not such an interest in the

matter as gave him a right to appeal from the decree of the Circuit Court.

2d. That if he previously had such an interest, he had, by the settlement and compromise made between himself and Bennett subsequently to the decree of the Supreme Court in the premises, parted with and extinguished the same.

The Court does not concur with the counsel in these views, nor does it assent to the truth of these propositions. Previous to the compromise referred to, the appellant pos-sessed equitable claims against Bennett which he could make available as an off-set against his judgment at law, and which the Supreme Court have by its decree recog-nized, and which, but for the equitable lien of Bennett's attorneys upon said judgment for their services in obtain-ing the same, and which lien the Supreme Court has held to have priority over said equitable claims of Carter, might have entirely extinguished said judgment, or very much reduced it. Nor does this Court think that the set-tlement and compromise made by and between Carter and Bennett of all those legal controversies and claims against each other, including the said judgment in trover, has divested Carter of the interest he so previously possessed to have a fair and equitable adjustment of the claims of Bennett's attorneys upon that judgment, nor have they deprived him of the standing in Court to contest these claims with said attorneys, which, in virtue of his recog-nized claims, he had before the settlement and compro-mise. The compromise made the release and satisfaction of the judgment by Bennett subject to such lien as might be decreed to exist, chargeable to Carter, and which lien Carter was resisting, and subject to the lien of Bennett's attorneys, if any such lien be found to exist, and be chargeable by law or in equity against Carter—(see record

page 37.) The compromise operated as a mutual release of all claims and demands mutually existing between them, and tied up the hands of both so as to forbid any legal proceedings by the one against the other, and which, so far as Bennett was concerned, extinguished the judgment and all his interest therein, yet kept it alive for the purpose of answering to and being made subject to any lien existing against it in behalf of Bennett's attorneys, and to this extent equally kept alive Carter's equitable claims against it; and although these were made subordinate to the equitable lien of Bennett's attorneys, yet they were sufficient for the purpose of resisting said equitable lien beyond an equitable extent. Besides, Carter, by the decree of the Circuit Court, was required to pay into Court a sum sufficient to cover the amount of principal and interest decreed by the Court to be paid to Bennett's attorneys. He was then still a party in the cause, subject to and subject to the Court's decree, and being not only still clothed with his unextinguished equitable demands against the judgment, but also having, by his agreement with Bennett, imposed upon himself the obligation to take the release of the judgment, subject to such lien as might be found to exist against the same in behalf of Bennett's attorneys, he had an interest to contest both the lien and its extent; and even if he was precluded by the decree of the Supreme Court, and subsequent compromise, from questioning the lien itself, he was not precluded from questioning its extent.

Taking this view of the subject, the Court considers that the appellant occupies a position which entitled him to appeal from the decree of the Circuit Court, and therefore the motion to dismiss the appeal is overruled.

We proceed now to examine the grounds assigned for the appeal.

As to the first ground, the evidence taken and used in this case does not, in our opinion, sustain the conclusion of appellant's counsel, that the Court, in making its decree, made any contracts with Bennett the *criteria* or basis in administering its equity. Upon an examination of the evidence, we are unable to discover that any contract before or at the time of the rendition of the said services by Bennett's attorneys, other than an implied contract to pay whatever such services were reasonably worth, has been established to exist between Bennett and his attorneys.

There is nothing appearing in the decree to show, nor does its language so indicate, that the amounts decreed were arrived at by a consideration of any express contracts found or alleged to exist between the parties. On the contrary, the decree is entirely silent on this subject, and the evidence looks to a "*quantum meruit*," with the exception of some loose statements of Bennett, testified to by Mr. Eppes, and his own vague statement in his answer as to the amount due to A. G. Semmes, and some other admissions by him long after the rendition of the services, all which are mentioned by his statements in his conversation with Mr. Davis in New Orleans, in June, 1853, which indicate anything but a recognition of any previously existing contract between himself and his attorneys.

All this testimony speaks not of any contract, in writing or verbal, made and entered into by Bennett and his attorneys either before or at the time said services were rendered, but, on the contrary, the witnesses speak of the compensation, in reference to its fairness and reasonableness, assuming as a basis a "*quantum meruit*," and it is upon such evidence the decree of the Circuit Court is founded.

The second, third and fourth grounds are involved in the discussion of the first and answered by it.

As to the fifth ground, if the sums allowed by the decree of the Circuit Court are not justified by the evidence taken in relation thereto, then the charge that they are exhorbitant may be correct, and, if so, it becomes the duty of this Court to reduce them so as to conform to the evidence. On this point the Court will hereafter express its views and make such order as may be proper in the premises.

As to the sixth ground, this Court would unwillingly assume, except in cases where its interposition would be more clearly justifiable than is apparent in this case, to restrict an individual in the amount of professional aid he should invoke to assert or to defend his rights or interests, and yet it might with entire propriety in this and similar cases interpose so far as to confine the claim for services within the limits of a just and reasonable compensation.

The Court does not perceive the force of the objection that four counsel should be employed and allowed separate compensation in one suit for one trial, when it appears that in such suit there were required unusual and extraordinary exertions, because it involved a large amount, great responsibility, unremitting attention and labor, surrounded by peculiar and pressing circumstances. If it shall appear that such compensation is neither unjust nor unreasonable, the individual himself, whose rights are invaded or withheld from him, is the most competent judge of the amount and kind of professional auxiliaries he should employ to assert or to defend such rights; but to protect him or those subrogated to his rights from unreasonable exactions by those whom he had summoned to his assistance, may very properly be deemed a duty devolving on a court of justice. In this case, whilst the court

does not perceive the propriety of its regulating the number of the attorneys, it will exercise its authority to enquire into and confine their claims within the limits of justice and reason.

The court has been referred to the case of Edward C. Bellamy vs. Samuel C. Bellamy's administrator, decided by this court in 1855, and the rule adopted for that case has been invoked as a measure of compensation in this. This court does not intend to interfere with the rule or principle of allowance adopted in that case, but deems it unapplicable here, as the cases are not, in the opinion of the court, parallel.

As to the seventh ground, we do not think the court erred in determining on the evidence that the attorneys were entitled to a lien or in recognizing the validity of the judgment in trover. This court had already held that the claims of the attorneys constituted an equitable lien on the judgment, and, as such, to have priority. The extent of this lien, however, was to be ascertained upon the basis of a "*quantum meruit.*" Now this court holds, that, however strong may be the equities of Carter, they must necessarily yield to this lien so far and to the extent it is ascertained to be just and reasonable, and to that extent the judgment stands as a security for its satisfaction. If any doubt could have been entertained previously on this point, or in relation to the character of the judgment, as being inequitable or not, the compromise, which is a part of the evidence in this case, made by and between Bennett and Carter subsequent to the decision of the Supreme Court, is well calculated to exercise exclude enquiry on that subject. If any lien should be found to exist in behalf of Bennett's attorneys, then the satisfaction, release and discharge of the judgment are not to affect such lien, but are ex-

26

pressly made subject to it—(see record, page 37.)　The same may be said in relation to the character of the judg- ment; and the opposition thereto upon the ground of its being inadequate has manifestly been abandoned by the com- promise between the parties.　The question, then, is not as to the existence of the attorneys' lien upon the judg- ment, but as to the extent of the same; and this Court is to enquire whether the Circuit Court has carried out the directions of this Court and founded its decree upon the basis prescribed for ascertaining the extent of the attor- neys' lien—that is, of a "*quantum meruit*," or has pro- ceeded upon grounds not authorized by the decree of this Court.

We are satisfied, upon examination of the evidence, that it is not sufficient to establish any express contracts, ver- bal or in writing, for compensation for services between Bennett and his attorneys, before or at the time said ser- vices were rendered by them, or by either of them, nor are we able to discover that the allowances by the Circuit Court have been made upon any such consideration.　On the contrary, the evidence does not speak of the value of the services as being established, but of their reasonable value, and to which said services are justly and reasonably enti- tled, and it is proper to conclude that the Circuit Court founded its decree upon the evidence before it.　The coun- sel on both sides have taken a very wide range in argument, going back into the history of the original transactions be- tween Carter and Bennett and his associates, out of which this case has arisen.　We do not deem it expedient or ma- terial to enter this field of discussion to seek for informa- tion to guide us to a conclusion in the matters now under consideration.　That history presents two aspects, neither of which is creditable to the parties; and, although it may afford entertainment to its readers, it does not enlighten

this Court upon the points now presented for examination. Entertaining these views, we proceed to examine the allowances made by the Circuit Court as compensation due to Bennett's attorneys.

And, first, as to the amount allowed A. G. Semmes, we think the Circuit Court has erred, and that upon the evidence that allowance should not have exceeded $3,500. It is clear that Semmes himself did not claim more than this as a principal sum up to June, 1853, nor at that time, and neither the evidence nor propriety warrants an allowance for principal beyond this.

Bennett, in his answer, filed on the 24th July, 1854, to the bill of complaint against him by Carter, says the fees due A. G. Semmes, as one of his counsel in the said judgment in trover, is the sum of $5,000—that is to say, the sum for fees at the time said answer was filed; but W. G. M. Davis, in his deposition, (see record, page 53,) states, that in June, 1853, in New Orleans, Bennett showed him a letter from Semmes enclosing his account for professional services in the trover suit between Bennett and Carter and in a variety of other cases and business; *that the charge made by Semmes in that account was* $3,500, as of the day of the judgment in trover, in addition to which he claimed interest from that day—the day of the rendition of the judgment; that after Carter had filed his bill against Bennett, Semmes and Bennett calculated the interest on the $3,500, added it to principal, and then, in the answer of Bennett, the approximate result was put down as being $5,000. This explains the statement of Bennett, in his answer, that the amount due Semmes for fees was $5,000. Of this amount $1,500 are for interest and the balance, or $3,500, are for principal.

We do not deem it necessary, in this connection, to refer to nor to consider the testimony of Eppes in relation to

the statement to him by Bennett as to the amount due to Semmes for services in said suit, as it is manifest from Bennett's subsequent conduct and declarations that there was no specific agreement between himself and Semmes as to the amount of compensation; and, further, Semmes himself did not claim more that $3,500 in June, 1853, for principal, as compensation for services. Davis, (see record, page 55,) after detailing the reasons for his opinion, says expressly, that he regards the *charge made by Semmes as a fair and proper one*, from which we conclude that his services, were, in the opinion of the witness, such as to entitle him to this amount of compensation upon the basis of a "*quantum meruit.*"

Davis, from his position and intimate connexion with the suit in trover, had a better opportunity of witnessing and knowing the nature and extent of the services performed by Semmes, and therefore of making a just estimate of their value, than any other witness who has testified.

As to the claims of W. G. M. Davis for his services rendered in said trover suit, A. G. Semmes being asked (see record, page 66,) to state what, in his opinion, the professional services rendered to Bennett by Davis were worth, estimates their value in detail, and states, that those rendered in the Supreme Court of the State were worth $2,000, and those rendered in the Supreme Court of the United States were worth $1,200.

Mr. Hogue, also a witness for Davis, (see record, page 71,) expresses the opinion that the claim of Davis is not too large, and founds that opinion upon the magnitude, intricacies and difficulties of the questions involved, and the ability of Davis in the management of the cause, as well as the amount in controversy.

As to the claim of Finley, Davis expresses the opinion,

(see record, page 53,) that his charge of $500 in the Circuit Court and $500 in the Supreme Court is *fair* and *proper*, and he founds his opinion upon *his* knowledge of the services performed by Finley.

Therefore this Court considers so much of the decree as allows $5,000 to A. G. Semmes for his services is erroneous, and that $3,500 is all that should have been allowed, and this without any interest thereon, and the Court below is directed to correct the decree in this respect; that so much of said decree as allows $3,700 to W. G. M. Davis is affirmed for that amount, but interest thereon is disallowed; that so much of said decree as allows $1,000 to Finley & Campbell is affirmed for that amount without interest thereon.

With respect to so much of the decree of the Circuit Court as allows $500 to Thomas Baltzell, this Court, in view of the conflict of the evidence presented by the record upon the admissibility of this claim, is unprepared to come to a satisfactory conclusion. This matter is therefore referred back to the Circuit Court to be further enquired into, and if it shall be shown by the claimant, upon such enquiry upon further evidence, that he has not excluded himself from the compensation now claimed by him by his admission in his deposition made in the trover case of Bennett vs. Carter and exhibited in evidence in this case, then he may be allowed such reasonable amount as the evidence may authorise the Circuit Court to award.

The Court, looking to the circumstances of this case and in the exercise of its discretion as a court of chancery, orders and decrees that no interest be allowed upon either of the sums which shall be definitely awarded by the Circuit Court to Semmes, Davis, Finley & Campbell and Baltzell until a final decree for the several and respective allowances shall be rendered by the Circuit Court.