650 So.2d 1008 (1994)
CITIZENS & PEOPLES NATIONAL BANK OF PENSACOLA, Appellant/Intervenor/Cross-Appellee,
v.
Grace B. FUTCH, Appellee/Cross-Appellant,
Howard Head, Appellee.
No. 91-3542.
District Court of Appeal of Florida, First District.
March 30, 1994.
Order Denying Rehearing and Rehearing February 16, 1995.
*1010 Thomas M. Brady, Wells, Brown & Brady, P.A., Pensacola, for appellant.
W.H.F. Wiltshire, Harrell, Wiltshire, P.A., Pensacola, for appellee, cross-appellant Futch.
Robert G. Kerrigan, Kerrigan, Estess, Rankin & McLeod, Pensacola, for appellee Howard Head.
Howard Head, pro se.
Order Denying Rehearing and Rehearing En Banc February 16, 1995.
PER CURIAM.
In this appeal, we review an order of the trial court establishing the distribution of funds securing a letter of credit issued by appellant Citizens & Peoples National Bank of Pensacola for the benefit of appellee Howard Head. The funds ($170,000.00) were deposited by appellee Grace B. Futch to secure a judgment arising from litigation between Head and Futch. The parties raise a number of issues pertaining to the priority of their respective claims to the funds. We affirm in part, reverse in part and remand for entry of an order consistent with this opinion.
Howard Head, represented by attorney Robert G. Kerrigan, sued Grace B. Futch in Division "A" of the trial court alleging breach of contract and fraud as a result of Futch's failure to pay a real estate commission. The jury awarded Head treble damages totalling $390,000.00 in addition to costs and attorney's fees. The trial court later awarded attorney's fees of $100,000.00. During the pendency of the appeal, Futch posted a letter of credit valued at $670,600.00 and issued by appellant Citizens & Peoples National Bank in order to secure Head's judgment. On appeal, this court held that Head was not entitled to the treble damages awarded nor attorney's fees. Thus, Head's award was reduced to $130,000.00. Futch v. Head, 511 So.2d 314, 319-321 (Fla. 1st DCA 1987), rev. denied, 518 So.2d 1275 (Fla. 1987). The appeal bond (letter of credit) was then reduced to $110,000.00.
After the appeal, but prior to entry of final judgment on remand, appellant Citizens was so confident that Head would recover a judgment from Futch that Citizens entered into loan agreements with Head, accepting assignments of up to $90,000.00 of the expected letter of credit proceeds[1] as collateral for the *1011 loans.[2] On September 9, 1987, Futch signed an "acknowledgment" of the assignment from Head to Citizens.[3] On remand of the appellate decision, the trial court entered judgment for $130,000.00 plus interest.
Unbeknownst to Citizens and Head's attorney, Kerrigan, Futch had instituted a mortgage foreclosure suit in Division "K" of the trial court against Head and Gulf Management of Pensacola, Inc., a corporation to which Head was the principal party. This suit was settled on January 25, 1988 by order of Judge Parnham incorporating an agreement whereby Head would pay to Futch $58,500.00 plus interest, such sum to be deducted from the $130,000.00 judgment awarded to Head in Futch v. Head. The agreement stipulated that a final judgment would be entered against Gulf Management of Pensacola, Inc. The final judgment ordered Head and Futch to effect a setoff[4] of their mutual indebtedness.
Upon learning of the settlement agreement between Futch and Head, Citizens realized that the $110,000.00 letter of credit would not be sufficient to pay the approximately $68,000.00 setoff due to Futch, the $82,541.51 balance then owed to the bank pursuant to Head's loan agreements, and Kerrigan's contingency fees and costs. Owing to this concern, Citizens filed a motion to intervene in the Division "A" proceedings. Citizens motion to intervene was heard on May 25, 1988. Citizens sought judicial recognition of its assignment of up to $90,000 and a determination that this "secured interest" was entitled to first priority upon satisfaction of Head's judgment. At the hearing, the trial court ordered Futch to increase the value of the fund to $170,000.00. On June 8, 1988, Futch requested the trial judge to take judicial notice of the settlement agreement between Futch and Head and compel the parties to effect the setoff as agreed.
By memorandum ruling of August 3, 1988, the trial court (Div. "A") ruled as follows: (1) Citizens must transfer $67,906.55[5] of the funds to Futch; (2) the remaining $102,093.45 of the funds shall be released to Head; (3) Citizens may assert a claim against the fund (letter of credit) if it does so within ten days; (4) Futch's motion to tax costs was denied. An amended final judgment was entered August 18, 1988. The amended final judgment did not alter the substantive provisions of the August 3, 1988 ruling, but again gave Citizens ten days to assert its claim against the fund. In response to the ruling, Futch informed the court that she would appeal the denial of her motion to tax costs. For its part, Citizens informed the trial court that it would file an interpleader/declaratory judgment action to assert its claim against the bond funds. In addition, Citizens asked the trial judge to prioritize the claims against the bond fund but the court did not do so. In Division "A", Futch filed a motion to enforce the prior judgment ordering payment of $67,906.55 to Futch. Citizens paid Futch $67,906.55 on September 30, 1988.
Futch then filed an appeal of the amended final judgment challenging the denial of her motion to tax costs. Citizens cross appealed the trial court's failure to prioritize the respective claims of the parties. This court affirmed the denial of Futch's motion for costs, but reversed and remanded as to the bank's cross appeal, finding that the trial court erred in ordering Citizens
to release the appeal bond proceeds in accordance with a settlement agreement between Futch and Head and an order of the court in an unrelated suit without the *1012 Bank being afforded an opportunity to assert its security interest in the proceeds.
Futch v. Head, 566 So.2d 862, 863 (Fla. 1st DCA 1990), rev. den. 581 So.2d 164 (Fla. 1991).[6] (hereinafter, Futch II).
On August 29, 1988, Citizens filed its interpleader/declaratory judgment action naming Kerrigan, Head, Futch and the law firm of Shell, Fleming, Davis & Menge, P.A. (Head's counsel), as defendants.[7] The interpleader action was assigned to Division "D". The complaint asked Division "D" to establish the respective rights of the defendants to the bond fund. After naming Head and Futch as defendants in the interpleader action, Citizens then moved to voluntarily dismiss Futch and Head from the action and the trial court granted the motion. Thereafter, Citizens and the remaining defendant, Kerrigan, filed a joint motion to dismiss the action, requesting that the "remaining monies" in the court's registry be disbursed to Citizens. The trial court (Div. "D") granted the motion on November 3, 1989, ordering that the remaining monies in the court's registry (less clerk fees) be disbursed to Citizens.
To further complicate matters, Howard Head filed Chapter 7 bankruptcy proceedings on February 16, 1989, although Citizens and Kerrigan received leave from the bankruptcy court to pursue their respective claims against the letter of credit proceeds.[8] A representative of the trustee appeared in the Division "A" case and requested that any money due to Mr. Head be made payable to the trustee.
On remand of Futch II, Citizens and Kerrigan acknowledged their private agreement to a distribution of the remaining $102,093.45 as between them. Citizens and Kerrigan sought, however, an adjudication that both their claims were superior to Futch's. Upon such a ruling, both Citizens and Kerrigan would be entitled to full payment from the $170,000.00 fund, presuming that the $67,906.55 already paid to Futch could be recovered. At the hearing on remand, it was undisputed that: (1) Kerrigan claimed attorney fees and costs totaling $86,946.86, of which $71,890.01 had already been paid, leaving a claim for the balance of $15,056.85. The amount owed to Citizens as of the August 18, 1988, amended final judgment was $85,492.93. The priority of claims between Kerrigan and Citizens was not important as those parties had reached agreement as to their respective rights. The trial court (Div. "A") entered an order establishing the priority of claims: first priority  $67,906.55 to Futch; second priority  $15,056.85 to Kerrigan per his amended charging lien; third priority  $82,541.81 to Citizens; last priority  remainder to Head. The trial court noted its prior order returning the funds to the registry of the court to await final distribution.
As between Citizens, Kerrigan and Futch, the priority of rights to the funds securing the letter of credit issued by Citizens rests in the application of Chapter 675, Florida Statutes, and Uniform Commercial Code, Article 5, pertaining to letters of credit. A letter of credit is properly described as an arrangement consisting of two contracts and the letter of credit. The arrangement consists of the underlying contract between *1013 the customer and the beneficiary (in this case the judgment awarded to Head); the reimbursement agreement between the customer (Futch) and the issuing bank (Citizens); and the letter of credit between the issuing bank and the beneficiary (Head). Under a letter of credit, the issuer's obligation to the beneficiary (creditor) is said to be primary. That is, the issuer cannot claim defenses that the principal debtor has against the beneficiary. "The issuer [Citizens] must honor his drafts even if the issuer's customer [Futch] has failed to pay agreed fees, has defrauded the issuer, has unequivocally repudiated, and so on." 2 James J. White & Robert S. Summers, Uniform Commercial Code, § 19.2 (3d ed. Supp. 1993) (citing U.C.C. § 5-114(1)). Once an irrevocable letter of credit has been established, the issuer's obligation may not, under U.C.C. Article 5-106(2) be extinguished without assent of the beneficiary. Id. at § 19-4; § 675.106(2), Fla. Stat. (1991); Sea Management Service, Ltd. v. Club Sea, Inc., 512 So.2d 1025 (Fla. 3d DCA 1987); Braun v. Intercontinental Bank, 466 So.2d 1130 (Fla. 3d DCA 1985).
Under Section 675.116(1), Florida Statutes, the right to draw under a letter of credit can be transferred or assigned only when the credit is expressly designated as transferrable or assignable. However, even where a letter of credit is not transferrable or not assignable, the beneficiary may, before performance of the conditions of the credit, assign his rights to proceeds. § 675.116(2), Fla. Stat. In the present case, the letter of credit issued by Citizens is not expressly designated as transferrable or assignable; therefore, appellant Citizens can claim at most an assignment of the proceeds of the letter of credit, or that portion of the $170,000.00 ultimately found to be due and owing to Head. The distinction is this: where a letter of credit is assignable, the assignee has the right to execute and sign drafts which the issuer must honor; where the letter of credit is not assignable, the assignee possesses only the right to receive the proceeds of drafts properly drawn by the beneficiary. Shaffer v. Brooklyn Park Garden Apartments, 311 Minn. 452, 250 N.W.2d 172, 177 (1977); Algemene Bank Nederland, N.V. v. Soysen Tarim Urunleri Dis Ticaret Ve Sanayi, A.S., 748 F. Supp. 177, 181-182 (S.D.N.Y. 1990). In addition, leading commentators note that the trend in the decisional law holds that a trustee in bankruptcy, as successor to the beneficiary, succeeds to the right to draw on the letter of credit. 2 J. White & R. Summers, Uniform Commercial Code, § 19.10 (3d ed. Supp. 1993) (citing Eakin v. Continental Illinois Nat. Bank & Trust Co. of Chicago, 875 F.2d 114, 8 UCC2d 422 (7th Cir.1989); Unifirst Federal Savings Bank v. American Ins. Co., 905 F.2d 208, 11 UCC2d 926 (8th Cir.1990)). In the present case, neither Head nor the trustee in bankruptcy has executed a draw on the letter of credit.
Here, the letter of credit, itself, describes Citizens' obligation to distribute the proceeds of the letter of credit in accordance with the final determination of the award in the original action.
Citizens ... does hereby agree and commit itself to abide by any order of [the courts] regarding disposition and payment of any proceeds finally determined to be due from Grace B. Futch to Howard Head and his attorneys ... in a lawsuit in the Circuit Court of Escambia County, Florida, Case No. 82-3381, which is presently on appeal. Distribution may also be made, in the alternative, upon stipulation from a member of Kerrigan, Estess & Rankin [or their successors] and the law firm of Harrell, Wiltshire, Stone & Swearingen, or [their successors].
Because the letter of credit obligates Citizens to distribute proceeds due from Futch to Head and his attorneys in Head's original suit against Futch, attorney Kerrigan claims to be a beneficiary of the letter of credit. While this is true under the literal terms of the letter of credit, such terms are not legally dispositive of Kerrigan's claim as Kerrigan was not a "party" to the action, and any judgment in the action was due to Head rather than Kerrigan, whose claim to attorney's fees was merely derivative of Head's judgment. Thus, where Head has secured a judgment against Futch, and Futch has secured a lesser judgment against Head, we cannot find, and the parties have not directed *1014 us to any rule of law which would prohibit Head and Futch from offsetting their respective liabilities arising from separate actions despite the lack of identity of parties, thereby effectively reducing the judgment due Head in the original action. Moreover, the validity of the charging lien and amended charging lien by which Kerrigan would assert an interest in the proceeds are subject to question as we will discuss, infra. To the extent that Head and Futch may have colluded, fraudulently or otherwise to deprive either Citizens or Kerrigan of the proceeds of the letter of credit, such equitable considerations must be viewed against the background of the solemn obligation imposed upon the issuer of the letter of credit, which we will now discuss in the context of Citizens' interpleader action.
The propriety of Citizens' Division "D" interpleader action is highly questionable. Leading commentators have expressed the view that it is not even appropriate for the issuer of a letter of credit to file an interpleader action. "[I]nterpleader provisions are not properly employed as a means for the issuer to avoid the risk of dishonor so purposefully allocated by the UCC." 2 J. White & R. Summers, Uniform Commercial Code, § 19-7 (3d ed. Supp. 1993) (citing Royal Bank of Canada v. Weiss, 172 A.D.2d 167, 567 N.Y.S.2d 707, 14 UCC2d 1186 (1991)). Having decided not to honor the demands for payment, the bank cannot "gratuitously characterize itself as a mere stakeholder... ." Id.
The utility of a letter of credit depends upon quick payment or, at minimum, quick decision whether to pay or not. Banks should not be permitted to hide behind the court's skirts in an interpleader action. But see Algemene Bank Nederland v. Soysen, 748 F. Supp. 177 (S.D.N.Y. 1990).
2 J. White & R. Summers, Uniform Commercial Code, § 19-7 (3d ed. Supp. 1993). An issuer of a letter of credit should seldom be allowed to avoid its obligations to pay its drafts except in the most egregious cases of fraud. Id. Yet, in its interpleader action, Citizens did not even allege fraud on the part of either Futch or Head. Most significantly, Citizens' interpleader action alleged, inter alia; (1) Head owed Citizens up to $90,000.00 of the funds valued at $170,000.00; (2) Citizens had been ordered to disburse $102,093.45 to Head; (3) Citizens had been ordered to disburse $67,906.55 to Futch. Clearly, under the allegations of the complaint, Head and Futch were interested and necessary parties to the dispute. Yet, inexplicably, Citizens moved to voluntarily dismiss Head and Futch and the trial court granted the motion. Then, upon joint motion of Citizens and defendant Kerrigan, the trial court (Div. "D"), on November 3, 1989, ordered the remaining $102,093.45 of the fund (less court registry fees) to be disbursed to Citizens which, it was later learned, had a side agreement with Kerrigan establishing their respective rights to the $102,093.45. We find that the dismissal of Futch and Head from the interpleader action compels us to declare the proceedings void for lack of due process of law.
We turn now to the question of the priority of Kerrigan's charging lien. Appearing pro se, appellee Howard Head argues for the first time on appeal that Kerrigan's charging liens were not timely filed, and that he was not served with proper notice of the charging liens.[9] Head is correct *1015 in the assertion that he was not served with notice of the charging liens. The record shows that Kerrigan's charging liens were served on counsel for Citizens and Futch, but no notice was provided to Head, Kerrigan's client and the party to be charged. The requirements for the imposition of a charging lien are:
(1) there must be a contract, express or implied, between the attorney and the client; (2) there must be an understanding, express or implied, between these parties that payment is either dependent upon recovery or that payment will be made out of the recovery; and (3) there must have been an attempt to avoid the payment of fees or there must be a dispute as to the amount involved.
Brown v. Vermont Mutual Ins. Co., 614 So.2d 574, 580 (Fla. 1st DCA 1993) (citing Sinclair, Louis, Siegel, Heath, Nussbaum, & Zavertnik v. Baucom, 428 So.2d 1383, 1384 (Fla. 1982)). All that is required to entitle the attorney to perfect a charging lien is for the attorney to file a notice of charging lien or otherwise pursue the lien in the original action prior to its termination. Brown v. Vermont, 614 So.2d 574, 580 (Fla. 1st DCA 1993) (citing Hannah v. Elder, 545 So.2d 503, 504 (Fla. 4th DCA 1989)). The attorney's charging lien must be filed before the case goes to final judgment or is dismissed. Id. at 580, citing Hutchins v. Hutchins, 522 So.2d 547, 549 (Fla. 4th DCA 1988).
Attorney Kerrigan represented Howard Head in the original action. The record does not disclose the precise point at which Howard Head no longer participated in the proceedings. It is known, however, that Head filed Chapter 7 bankruptcy proceedings on February 16, 1989. Kerrigan did not file a charging lien until December 3, 1990. Kerrigan's amended charging lien was presented to the trial court on May 25, 1991, and filed on September 30, 1991.[10] Neither of these charging liens was served on Howard Head, the party to be charged. In Rose v. Marcus, 622 So.2d 63 (Fla. 3d DCA 1993), the attorney had served the client with notice of intent to file a charging lien but failed to inform the client that the lien issue would be addressed at the hearing on attorney's fees. The appellate court ordered the trial court on remand to reconsider the charging lien issue after proper notice to the client. In the present case, however, where Kerrigan made not the slightest attempt to notify Head of his charging lien, we find that Kerrigan did not timely perfect his charging lien prior to the judgment now under review. Kerrigan, therefore, missed his opportunity to perfect his charging lien in the original action. Accordingly, to remand for reconsideration of the charging lien would not be appropriate and Kerrigan may not recover as a lienor.
Applying "letter of credit" law to this case compels the following conclusions. The setoff of judgments between Head and Futch was permissible. Head's judgment against Futch was therefore properly reduced by the amount of Futch's judgment. The trial court did not err in ordering the parties to effect this setoff, and did not err in ordering Citizens to return $67,906.55 of the $170,000 fund to Futch. Citizens has no valid claim against any part of the $67,906.55 returned to Futch by virtue of Head's assignment of the proceeds or the "acknowledgment of assignment" signed by Futch. Although we do not decide the issue, it may be that such an acknowledgment of assignment may subject a third party such as Futch to liability for failure to pay an assignee funds originally owed to the assignor. Such a rule is inapplicable under the present circumstances, however, where the $67,906.55 was not owed to the assignor (Head), much less the assignee (Citizens). Stated alternatively, the $67,906.55 may not be regarded as "proceeds" of the letter of credit as such funds were not due and owing to Head. As such funds were not due Head, they were likewise not due Citizens by assignment. It follows, then, that Citizens' attempt to assert a claim against the $67,906.55 is a clear abuse of its *1016 fiduciary duty as issuer of the letter of credit.[11]
In the ordinary case, all that Citizens can do with the letter of credit funds held by it (aside from returning the unused portion to Futch), is to forward the proceeds to Head or Head's trustee in bankruptcy upon presentment of a properly drawn draft. Head's assignment of proceeds, however, complicates the analysis somewhat. Section 675.116(2), Florida Statutes, states that even where a letter of credit is not assignable, the beneficiary of a letter of credit may assign the proceeds of the credit as collateral security for a loan. Section 679.305, Florida Statutes, states that a security interest in letters of credit may be perfected by possession. Because Citizens had possession of the funds and an assignment of interest prior to Head's declaration of bankruptcy, Citizens perfected a security interest in up to $90,000.00 of the proceeds otherwise due Head. Thus, Citizens may have perfected a secured claim as against Head's general creditors,[12] but not as against the $67,906.55 due to be returned to Futch.
Under the present circumstances, the need for a formal execution of a draw on the letter of credit is obviated. In light of Head's bankruptcy, however, the sum of $102,093.45 must be forwarded to Head's trustee in bankruptcy. Head's assignment of up to $90,000.00 of the proceeds of the letter of credit to Citizens as "collateral" for their separate and independent loan transactions does not alter this result. The letter of credit was not assignable. Citizens did not have the right to draw directly against the proceeds. Only Head or his trustee in bankruptcy had the right to draw against the proceeds. No such draw was executed. Therefore, the $102,093.45 must pass through the bankrupt's estate.
In summation, we affirm the trial court's (Div. "A"'s) order insofar as it compels Citizens to return $67,906.55 to Futch. We reverse the trial court's order insofar as it awards $15,056.85 to Kerrigan pursuant to his amended charging lien. Although the trial court's order notes that the $102,093.45 was ordered returned to the court's registry, we are unable to find such an order in the record, and it is unclear as to when and if such a transfer of funds was accomplished. Regardless of whether the $102,093.45 is currently held in the court's registry or by Citizens, the trial court is instructed to enter an order forwarding the sum of $102,093.45 to Head's trustee in bankruptcy.[13] Thereafter, if either Citizens or Kerrigan lays claim to any portion of the $102,093.45, they can assert their respective claims to the trustee of the bankrupt estate. Unfortunately for Kerrigan, he will go before the bankruptcy court as a general creditor rather than a lienor.[14]
AFFIRMED in part, REVERSED in part and REMANDED for entry of an order consistent with this opinion.
MINER and MICKLE, JJ., concur.
WEBSTER, J., dissents with opinion.
WEBSTER, Judge, dissenting.
I am unable to join the majority's opinion for a number of reasons. Accordingly, respectfully, I find myself constrained to dissent.
In the first place, it appears to me that the majority's analysis of the respective rights of the parties to the funds in issue by reference to article 5 of the Uniform Commercial Code (chapter 675, Florida Statutes) is in error. The record reflects that, subsequent to the entry in December 1985 of the original judgment for Head in the amount of $390,000.00, *1017 and at the same time that she filed her notice of appeal, Futch also filed a motion for a stay pending appeal. In that motion, Futch represented that she "desire[d] to put up appropriate security rather than post a supersedeas bond," and requested that she be permitted a short time within which to present such security. Subsequently, a stipulation reading as follows was filed by the parties:
The parties, by and through their undersigned counsel, stipulate that the Irrevocable Letter of Credit issued to Howard Head and the law firm of Kerrigan, Estess & Rankin in the sum of $607,600.00 will, under the conditions set forth therein, serve as appropriate security for a supersedeas bond under the laws of Florida and specifically, as provided in Fla.R.App.P. 9.310, and should be subject to disposition either by agreement between counsel or by order of the Court.
The trial court approved the stipulation, saying that "[t]he supersedeas bond, in the form of the Irrevocable Letter of Credit for $607,600.00 is hereby approved and will be negotiated or disposed of either by stipulation of counsel of record for the parties, or Order of this Court or an appellate court." Although the amount of the Letter of Credit was subsequently reduced by order of the trial court as a result of the first appeal, the other conditions contained in the stipulation and original order approving the stipulation remained unchanged.
From the foregoing, it appears clear to me that the parties intended the Letter of Credit to serve as a substitute for the supersedeas bond contemplated by rule 9.310, Florida Rules of Appellate Procedure. It appears equally clear to me that both Head and Futch (by her consent to assignment by Head to the Bank of up to $90,000.00 of the proceeds Head expected to receive from the Letter of Credit) induced the Bank to change its position and lend funds to Head. Therefore, it seems to me that, by their actions, Head and Futch are estopped from arguing that the proceeds from the Letter of Credit should be distributed in a manner different from that which would have been the case had a proper supersedeas bond been posted. In other words, they may not now argue, for the first time, that disposition of the proceeds should be controlled by article 5 of the Uniform Commercial Code. See § 671.103, Fla. Stat. (1985) (absent an express provision to the contrary in the Uniform Commercial Code as adopted, principles of law and equity, including estoppel, apply). Rather, it seems to me that disposition of the proceeds must be determined by reference to principles of law and equity generally applicable.
Second, it seems to me that Head is precluded from arguing for the first time on appeal that he did not receive timely notice of the filing of Kerrigan's charging lien. I do not understand how the alleged failure to give timely notice of the filing of the charging lien affects the trial court's subject matter jurisdiction, or constitutes fundamental error. Rather, it seems to me that Head should have first raised the issue in the trial court, either by a timely motion for rehearing or by a motion for relief from judgment, filed pursuant to rule 1.540(b), Florida Rules of Civil Procedure. Because he failed to do either, I would not address the issue. See, e.g., Dober v. Worrell, 401 So.2d 1322 (Fla. 1981) (as a general rule, appellate courts will not consider issues not presented to the trial court).
Moreover, my review of the record satisfies me that, on the merits, Head's challenge to Kerrigan's charging lien on the ground that he did not receive timely notice of its filing should be denied. While it is not clear from the record whether Head timely received notice that a charging lien had been filed, it is clear that Head's trustee in bankruptcy did have notice. In fact, in September 1989, an order was entered in which the bankruptcy could concluded that Kerrigan had "a duly perfected charging lien" as to the proceeds from the Letter of Credit, lifting the stay so that Kerrigan might pursue recovery against those proceeds. Thus, it seems to me that the knowledge of Head's trustee in bankruptcy must be attributed to Head, defeating his challenge to the charging lien on the ground that he did not receive notice of its filing. In addition, it is not clear to me why the order of the bankruptcy court does not now collaterally estop Head from challenging the charging lien.
*1018 Based upon the foregoing discussion, I believe that Kerrigan's claim to the proceeds, predicated upon his charging lien, is superior to Head's. See, e.g., Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik v. Baucom, 428 So.2d 1383, 1385 (Fla. 1983) ("[t]here are no requirements for perfecting a charging lien beyond timely notice"). I also believe that Kerrigan's claim is superior to Futch's. A charging "lien has priority over judgments obtained against the client subsequent to the commencement of the attorney's services. It is only inferior to judgments entered prior to the commencement of the services." Miles v. Katz, 405 So.2d 750, 752 (Fla. 4th DCA 1981). Because the judgment against Head which Futch seeks to have satisfied from the proceeds of the Letter of Credit was entered after Kerrigan had begun providing services to Head, that judgment is subordinate to the charging lien. Moreover, while the judgment does not qualify as a setoff, even if it did the outcome would be the same. Carter v. Davis, 8 Fla. 183 (1858).
The Bank concedes that its claim to the proceeds is subordinate to Kerrigan's. However, it argues that its claim is superior to those of Head and Futch. I agree. It seems to me that there can be little dispute regarding the superiority of its claim to that of Head. Surely, if ever a case for application of the principle of equitable estoppel existed, this is it. Head assigned to the Bank his interest in the proceeds, up to $90,000.00, to induce the Bank to make loans to him. It seems to me that Head is now estopped to claim an interest in the proceeds superior to the Bank's with respect to amounts still owed by him to the Bank, up to $90,000.00
Although perhaps not quite as clear with regard to Futch's claim, it seems to me that she, too, is equitably estopped to deny the superiority of the Bank's claim. Futch consented to assignment by Head of up to $90,000.00 of the proceeds Head expected to receive from the Letter of Credit, thereby causing the Bank to change its position and lend the funds to Head. She did not obtain her judgment against Head until several months later. Therefore, I find it difficult to understand how any claim she might have based upon that judgment could be superior to the Bank's claim.
In summary, I would dispose of the proceeds from the Letter of Credit as follows: first, by distributing $15,056.85 to Kerrigan to satisfy his charging lien; second, by distributing to the Bank an amount sufficient to cover Head's outstanding indebtedness, not to exceed $90,000.00; third, by distributing either the remainder or the amount owed by Head to Futch, whichever is less, to Futch; and, finally, by distributing to Head's bankruptcy estate any remaining sum.

ON MOTIONS FOR REHEARING
PER CURIAM.
The motions of appellant for rehearing, rehearing en bane, clarification and certification, and of appellee Robert G. Kerrigan for rehearing en bane, are denied.
MINER and MICKLE, JJ., concur.
WEBSTER, J., dissents with opinion.
WEBSTER, Judge, dissenting from denial of motion for rehearing.
Intelligent review was made unnecessarily difficult in this appeal because of the way that the case was litigated, both in the trial court and in this court. It was made even more difficult by the chaotic nature of the record on appeal. However, having examined the entire record with some care, I now feel relatively confident that both the majority opinion and my original separate opinion are erroneous, in part because of misperceptions regarding the facts. Accordingly, I would grant the motions for rehearing filed by appellant, Citizens & Peoples National Bank of Pensacola, and by appellee Robert G. Kerrigan. Because the majority has denied those motions, respectfully, I dissent.
In addition, I withdraw my previous separate opinion, concurring in part and dissenting in part, and substitute in its place the following dissent:
NOTES
[1] The readers of this opinion should carefully note the distinction between our use of the term "funds" to be used in reference to the corpus of the money deposited by Futch to secure the letter of credit, and our use of the term "proceeds" to denote only that portion of the funds ultimately due and owing to Head from the judgment against Futch.
[2] The assignment of the expected letter of credit proceeds from Head to Citizens was a separate transaction, wholly unrelated to the letter of credit issued by Citizens.
[3] Oddly, the assignment itself is dated the following day, September 10, 1987.
[4] We do not use the term "setoff" in the legal sense, as there was not strict identity of parties. Head's corporation and Head were parties to the suit instituted by Futch.
[5] The court calculated that Futch owed Head $130,000.00 (judgment) plus $40,304.60 (interest as of August 1, 1988) for a total of $170,304.60. Head owed Futch $58,500.00 (judgment) plus $9,711.15 (interest as of August 1, 1988) for a total of $68,211.15. Subtracting Head's liability from Futch's liability yields a liability of $102,093.45 owed from Futch to Head. Subtracting Futch's liability of $102,093.45 from the $170,000.00 then held in the letter of credit account yields the amount to be returned to Futch  $67,906.55.
[6] We categorically reject Citizens' frivolous assertion that this prior opinion establishes as "law of the case" its security interest in the funds. It is elementary that no determination of Citizens' asserted claim to the funds was intended. Rather, the case was remanded "in order that the court make its determination after affording the Bank opportunity to assert its claim and the remaining parties the opportunity to respond thereto." Futch v. Head, 566 So.2d at 863. Although our opinion states that both Head and Futch were aware that the Bank had a "preexisting lien" pursuant to the assignment by Head in his interest in $90,000.00 of the bond funds, that comment was in no way intended as a determination of either the validity or the priority of Citizens' asserted interest in the funds.
[7] The tenth day, August 28, 1988, fell on a Sunday. Therefore, Citizens' interpleader/declaratory judgment action was timely filed the following Monday, August 29, 1988.
[8] In an ORDER GRANTING MOTION FOR RELIEF FROM STAY the bankruptcy court determined that any monies due Head from the letter of credit account were subject to a "perfected secured claim" by Citizens and a "duly perfected charging lien" in favor of Kerrigan. The bankruptcy court therefore released Citizens and Kerrigan to pursue their claims to the funds. We are not bound by these determinations of the bankruptcy court.
[9] Kerrigan argues that Head did not dispute the validity nor the amount of the fees at the trial level. In any event, Head was denied the opportunity to object to the charges due to lack of notice. Analogous circumstances are frequently encountered in the area of family law, where appellate courts have had the occasion to reverse trial court orders modifying child support where one spouse was not on notice that modification would be at issue because the parties were brought to court on motion for hearing on contempt. In such cases, the failure to raise the subject of modification by appropriate pleading has been deemed a failure to properly invoke the subject matter jurisdiction of the trial court. Thus, the entry of a modification order constitutes fundamental error which may be raised for the first time on appeal. See, Dept. of Health and Rehabilitative Services v. Porbansky, 569 So.2d 815 (Fla. 5th DCA 1990); Dept. of Health and Rehabilitative Services v. Nolden, 556 So.2d 1176 (Fla. 5th DCA 1990). In the present case, not only was Head not on notice of Kerrigan's charging lien, but Head was no longer participating in the proceedings when the subject of the lien was raised. Therefore, this issue may be raised for the first time on appeal.
[10] In addition, Head was not present when Kerrigan discussed his claim of lien at the hearing held May 25, 1988.
[11] It also follows that the "acknowledgment of assignment" signed by Futch was a worthless document.
[12] We leave such a determination to the bankruptcy court.
[13] If the remainder of the fund has been diminished by court fees, Citizens shall be required to augment the tuna by the almost of the court fees, thereby restoring the balance to $102,093.45.
[14] We also reject Futch's claim that the trial court denied her due process by denying her the opportunity to argue a motion for attorney's fees and costs for excess bond coverage.