**ALGEMENE BANK NEDERLAND, N.V., Plaintiff,**

v.

**SOYSEN TARIM URUNLERI DIS TICARET VE SANAYI, A.S., Egebank A.S. Izmir Branch, Barrow Lane and Ballard Ltd. and HTC Commodity Corp., Defendants.**

No. 89 Civ. 7427 (PNL).

United States District Court, S.D. New York.

Oct. 9, 1990.

---

Lowenthal, Landau, Fischer & Ziegler, Charles S. Biener, of counsel, New York City, for plaintiff.

Robert Funicello, White Plains, N.Y., for Barrow Lane, Ballard & HTC Commodity.

Dogan & Morrissey, Kenneth S. Schechner, O.C., New York City, for Soysen Tarim, and Egebank.

## OPINION AND ORDER

LEVAL, District Judge.

This is an action for interpleader pursuant to 28 U.S.C. § 1335. Algemene Bank Nederland N.V. ("Algemene"), the issuer of a letter of credit, has paid the proceeds into court, serving notice on various contesting parties, and moves for an order of discharge and release from liability under 28 U.S.C. § 2361.

The defendants fall into two camps: Defendant Soysen Tarim Urunleri Dis Ticaret Ve Sanayi A.S. ("Soysen") is the specified beneficiary of the letter of credit. Soysen drew a draft on the credit in favor of Soysen's creditor, defendant Egebank A.S., Izmir Branch ("Egebank"). Soysen and Egebank move for summary judgment directing payment of the proceeds to Egebank.

The other camp consists of defendants Barrow Lane and Ballard Ltd. ("Barrow"), the account party at whose instance the letter of credit was issued by Algemene, and Barrow's parent, HTC Commodity Corp. ("HTC"), which levied against the proceeds in an effort to enforce a judgment in its favor against Soysen. Barrow and HTC crossmove for summary judgment in favor of HTC.

The facts are as follows: Algemene issued an irrevocable documentary letter of credit for $40,481.25, at Barrow's request and with Soysen as the designated beneficiary (the "Letter of Credit"). The Letter of Credit was procured by Barrow as the means of payment to Soysen for its shipment of Turkish apricots to Barrow.[1] The Letter of Credit was payable by "sight draft," in favor of Soysen upon its presentation of documents evidencing the shipment's arrival in New York and its successful passage through U.S.F.D.A. inspection. Payment was to be made within 15 business days of the vessel's arrival. On September 23, 1989, Soysen prepared a draft on the letter of credit in favor of Egebank, its "negotiating bank," presumably to secure a borrowing.

On October 25, 1989, Soysen presented the specified documents to Algemene, together with the draft dated September 23, 1989 directing Algemene to pay the face amount of the Letter of Credit to Egebank. The vessel had arrived in New York on October 24, 1989; Algemene was thus required to make payment before November 10, 1989.

On November 1, 1989, before Algemene had paid the draft, it was served with a sheriff's levy and order of execution asserting a claim by HTC to a substantial portion of the proceeds. The levy was based on a judgment previously obtained by HTC against Soysen in New York State Supreme Court, confirming an arbitration award in HTC's favor after a dispute over goods shipped to HTC in 1988, and awarding HTC $34,679.86.

In light of these two competing claims to payment of the proceeds, fearing litigation and the risk of double liability if it paid either claimant, Algemene commenced this interpleader action on November 6, 1989 and deposited the face amount of the Letter of Credit into the court registry.

### Discussion

A. *Algemene's Motion for Discharge*

■ Algemene moves for an order pur-

---

1. The application for the Letter of Credit was jointly signed by Barrow and its parent, HTC. The underlying contract for the shipment of the goods was with Barrow.

suant to 28 U.S.C. § 2361,[2] permitting it to be discharged from this action and protecting it against further liability. Algemene argues that a discharge is justified because it has complied fully with the requirements of 28 U.S.C. § 1335,[3] and because it asserts no right to the disputed moneys and no claim against any of the defendants other than this interpleader.

Soysen and Egebank oppose Algemene's motion for discharge. They argue that Egebank is entitled to the proceeds based on the draft delivered to Algemene on October 25, and that the interpleader was therefore wrongfully commenced. They assert that Soysen, the beneficiary, had assigned the proceeds to Egebank September 23, 1989, to secure Egebank's advance of funds. They argue that once Algemene was notified of the assignment, the proceeds of the Letter of Credit ceased to be the property of Soysen and became the property of Egebank, and Algemene was obligated to turn them over to Egebank regardless of the later-served sheriff's levy attempting to attach assets of Soysen. This obligation was so certain, they contend, that Algemene's commencement of an interpleader action constituted frivolous litigation, and Algemene should not be entitled to be discharged until Egebank has been paid.[4]

These arguments are not persuasive. Regardless of whether Egebank may ultimately prevail in collecting on the Letter of Credit, Algemene was faced with multiple claims and a significant risk of litigation if it favored one claimant over another. HTC's competing claim was not patently invalid. The purpose of the federal interpleader statute, 28 U.S.C. § 1335, is to allow a party in such a situation to avoid the risk of double liability and litigation if it chooses one claimant over the other. Algemene was fully justified in invoking interpleader. Having done so, and having complied with the statutory requirements, Algemene is now entitled to a discharge and protection against further liability, pursuant to 28 U.S.C. § 2361.

Algemene's motion for discharge is granted.

### B. *Egebank's Motion to be Excused its Late Filing*

Egebank moves to be excused for the late filing of its motion in lieu of an answer, or in the alternative for leave to answer out of time. Egebank received the summons and complaint on February 1, 1990. It contends that it did not answer immediately because, being a Turkish company with little knowledge of the Federal Rules of Civil Procedure, it had doubts about whether the action had been properly commenced or served. Egebank's doubts were based in part on the fact that the summons and complaint did not bear the signature or seal of the District Attorney, which it contends is the "usual custom." Egebank states that its understanding of Letters of Credit also led it to believe the interpleader action was a "nullity" and therefore no answer was required. It argues that it retained New York counsel as soon as it learned that it could be held in default for not answering. Karabayi Affidavit.[5]

---

**2.** Section 2361 provides that "in any civil action of interpleader ... a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court." If further provides that upon hearing and determining the case the district court "may discharge the plaintiff from further liability [and] make the injunction permanent."

**3.** Section 1335 provides that a party who has in its possession an instrument of value of at least $500 may commence an interpleader action in federal court if "(1) two or more adverse claimants ... are claiming or may claim to be entitled to such [instrument]; and (2) the plaintiff has deposited [the value of such instrument] into the registry of the court, there to abide the judgment of the court...."

**4.** Barrow and HTC do not oppose Algemene's motion for discharge. They contend that the interpleader was properly commenced.

**5.** Barrow and HTC contend that the real reason Egebank did not answer was that it knew it had no right to the Letter of Credit superior to HTC's claim, and because Soysen moreover was already arguing Egebank's case in its *own* answer

In any event, Egebank retained New York counsel on March 16, 1990 (the same counsel that Soysen had previously retained and who had prepared Soysen's answer). Counsel avers that he immediately sought the permission of the parties for Egebank to answer or move. While Algemene's counsel had no objection, counsel for Barrow and HTC refused to sign such a stipulation. Schechner Affidavit of May 14, 1990. On March 22, 1990, Egebank's counsel wrote to the court indicating its intention to move for leave to answer or move, and a conference was set for April 19. At that conference, Egebank's counsel again indicated its intent to move for leave, and also requested that plaintiff provide proof of proper service on Egebank. Plaintiff's counsel represented that he believed Egebank had been served, and that documentation of service would be provided. On May 8, 1990, Egebank's counsel again requested the documentation. Proof of service was not provided until June 12. In the meantime, on May 11, Egebank filed its motion for leave to answer or move. Several days later, Soysen and Egebank together moved to dismiss the interpleader or for summary judgment.

Barrow and HTC now argue that Egebank's delay of more than two months should not be excused, and that its summary judgment motion should be disregarded, because Egebank's explanation for the delay is insufficient to constitute "excusable neglect" under Rule 6(b).

I do not agree. While Egebank was negligent in ignoring for five weeks the summons and complaint it received on February 1, its lack of familiarity with the rules of United States courts mitigates its negligence to some degree. Moreover, once Egebank learned that it could be held in default for not answering, it moved swiftly to remedy the error—retaining New York counsel and immediately contacting the other parties for the purposes of obtaining a stipulation permitting it to answer. At this point it was only two weeks in default.

The further delay resulted from Barrow's unwillingness to excuse the brief default.

Egebank's delay in filing is excused.

## C. The Cross–Motions for Summary Judgment

Soysen and Egebank on the one hand, and Barrow and HTC on the other, move for summary judgment on the issue of entitlement to the proceeds of the Letter of Credit. At issue is whether Soysen made a valid assignment prior to HTC's levy against the assets of Soysen in Algemene's possession. Barrow and HTC argue that the Letter of Credit was not assignable because it did not expressly authorize transfer or assignment. They also argue that the October 25 presentment of the draft did not vest any rights in Egebank prior to HTC's service of the sheriff's levy on November 1, because the draft had not yet been accepted in writing (or "certified") by Algemene. Soysen and Egebank argue that the assignment was valid and transferred all rights to the proceeds to Egebank as of October 25.

■ The Letter of Credit provides that it is subject to the Uniform Customs and Practice for Documentary Credits (1983 Revision), International Chamber of Commerce, Publication No. 400 ("UCP–ICC"). Complaint Ex. B. When a letter of credit so provides, Article 5 of the New York Uniform Commercial Code ("NY–UCC"), which would otherwise govern disputes under letters of credit, "does not apply," although analogies to the NY–UCC may be drawn where the two bodies of law are not in conflict. See NY–UCC § 5–102(4); United Bank Ltd. v. Cambridge Sporting Goods Corp., 41 N.Y.2d 254, 392 N.Y.S.2d 265, 360 N.E.2d 943 (1976) (though NY–UCC is not controlling, pre-Code case law which was codified in the NY–UCC continues to govern in cases under the UCP–ICC).

■ The UCP–ICC distinguishes between "transfer" of a letter of credit and

(which asserted that HTC had no right to the Letter of Credit because it had been assigned to

Egebank before service of the sheriff's levy).

"assignment" of the proceeds. A transfer effectuates a more complete change. The transferee is effectively substituted for the original beneficiary. After transfer, it is the transferee who must present the draft and documentation to cause payment. Such transfer may be made to a new substituted beneficiary only if the letter of credit "is expressly designated as 'transferable' by the issuing bank." UCP–ICC Article 54(b); *accord* NY–UCC § 5–116(1). An assignment of proceeds, by contrast, changes only the party entitled to receive payment of the proceeds. In spite of assignment, only the named beneficiary may draw the draft in favor of the assignee. Such assignments are commonplace. Beneficiaries of letters of credit commonly borrow from "negotiating banks" against assignment of the proceeds of letters of credit. It is a conventional financing device for beneficiaries of letters of credit to preserve liquidity by borrowing from "negotiating banks" against assignment of the proceeds. The negotiating bank thus becomes entitled to collect the proceeds when the beneficiary has complied with the obligations of the letter of credit. *See* J. White & R. Summers, *Uniform Commercial Code* at 636 (1972); J. Dolan, *The Law of Letters of Credit* at ¶ 10.03[4] (1984). Such assignment of proceeds may be made regardless whether the credit provides on its face for "transferability." UCP–ICC Article 55; *accord* NY–UCC § 5–116(2).

■ This case clearly involves an assignment of proceeds rather than a transfer of the Letter of Credit, and as such is effective regardless of the Letter's silence about its transferability. On September 23, 1989, Soysen (the designated beneficiary) issued a draft directing Algemene to pay to Egebank the full proceeds of the Letter of Credit; the draft bears the stamp of Soysen. Complaint Ex. C. Egebank accepted the assignment and in exchange advanced the face value of the Letter of Credit to Soysen. Schechner Affidavit of May 11, 1990, at ¶ 7; Karabayi Affidavit of May 31, 1990 at ¶¶ 3–4. Soysen retained the responsibility of producing the required documents to Algemene, showing arrival of the shipment and its approval by the U.S.F. D.A. The adverse claimants have failed to show that there is any material issue of fact that could undermine the validity of the assignment.

■ Barrow and HTC argue that Egebank's rights to the proceeds did not vest upon presentation of the draft to Algemene, because there is no evidence that Algemene "accepted" the assignment. This argument is not persuasive. There is no showing that such acceptance was required to effectuate assignment. To the contrary, the Letter of Credit stated that Algemene "agree[s] with the drawers, endorsers and bona fide holders of drafts drawn under and in compliance with the terms of this letter of credit that the same *shall be duly honored upon presentation and delivery of the documents herein specified.*" Complaint Ex. B (emphasis added).[6] Neither Algemene nor Barrow and HTC have alleged that the draft did not comply with the terms of the Letter of Credit, or that the appropriate documents were not delivered. Thus, by the terms of the Letter of Credit itself, it appears that Egebank's right to receive the proceeds vested on October 25.[7]

This conclusion is reinforced by Section 5–116(2)(b) of the NY–UCC, which governs the question when an assignment of proceeds becomes binding on the issuer, bar-

6. Credits which contain clauses to the effect that the issuer's obligation runs to "drawers, endorsers and bona fide holders of drafts" are known as negotiation credits. The purpose of this language is to assure the negotiating party (usually a bank) that it will benefit from the issuer's direct obligation to pay them. Thus, negotiation credits are designed precisely to permit the type of assignment that occurred in the instant case. *See* J. Dolan, *The Law of Letters of Credit*, at ¶ 10.02[3] (1984); *First Commercial Bank v. Gotham Originals, Inc.*, 101 A.D.2d 790, 476 N.Y. S.2d 835 (1st Dept.1984), *aff'd*, 64 N.Y.2d 287, 486 N.Y.S.2d 715, 475 N.E.2d 1255 (1985).

7. The fact that Algemene was not required to actually make payment until November 10 does not mean that Egebank's right to the proceeds did not mature until that date.

ring subsequent payment to other parties.[8] Section 5–116(2)(b) provides that the "the issuer may honor drafts or demands for payment drawn under the credit *until it receives a notification of the assignment* signed by the beneficiary which reasonably identifies the credit involved in the assignment and contains a request to pay the assignee." NY–UCC § 5–116(2)(b) (emphasis added). The draft delivered by Soysen to Algemene on October 25 appears to have met all of these conditions; it contained Soysen's stamp, identified the Letter of Credit by the correct number, and directed Algemene to pay the proceeds over to Egebank.

The implication of NY–UCC § 5–116(2)(b) and the presentment provision of the Letter of Credit quoted above is that, after the beneficiary notifies the issuer of the assignment and complies with the other terms of the credit (chiefly the production of documents), the proceeds no longer belong to the beneficiary. By the same token, the proceeds are no longer subject to attachment by creditors of the beneficiary. This conclusion has been reached by several courts and commentators. *See, e.g., Supreme Merchandise Co. v. Chemical Bank,* 70 N.Y.2d 344, 520 N.Y.S.2d 734, 514 N.E.2d 1358 (1987) (attachment order served after issuer has accepted drafts negotiated by foreign banks, but before the issuer had honored the drafts, are invalid because proceeds are now owned by negotiating bank rather than by the original beneficiary); *Furness Withy, Inc. v. World Energy Systems Assoc.,* 642 F.Supp. 50 (W.D.Tenn.1985) (creditor may not succeed in attaching proceeds after the assignment has occurred); *First Commercial Bank v. Gotham Originals, Inc.,* 101 A.D.2d 790, 476 N.Y.S.2d 835 (1st Dept.1984), *aff'd,* 64 N.Y.2d 287, 486 N.Y.S.2d 715, 475 N.E.2d 1255 (1985) (attachment ineffective if issuer has already accepted drafts assigning proceeds to a negotiating bank); *Lantz International Corp. v. Industrial Termotecnica, Campana,* 358 F.Supp. 510 (E.D.Pa. 1973) (creditor could not attach proceeds because beneficiary had already negotiated drafts to two holders and the issuer had accepted those drafts; there was no longer any property of the beneficiary to attach); *see also* J. White & R. Summers, *Uniform Commercial Code* at 638 (1972) (assignee is protected against creditors of the assignor beneficiary who seek to garnish the beneficiary's rights under the letter of credit so long as assignee has perfected the assignment).[9]

In accordance with these precedents, I find that the sheriff's levy served on Algemene on November 1, 1989 did not entitle HTC to the proceeds of the Letter of Credit. Those proceeds had been effectively assigned to Egebank. By the time the sheriff's levy was served, the proceeds were the property of Egebank, not Soysen.

### D. *Algemene's Motion for Attorneys' Fees*

█ Algemene moves for attorneys' fees. Attorneys' fees are commonly grant-

---

8. The UCP–ICC is silent on the issue of when an assignment of proceeds vests.

9. In order for the creditor to successfully attach the proceeds, it must act within a narrow window. If it attempts to attach them before the beneficiary has complied with the credit's terms (e.g., produced the documents), the attachment is ineffective because there is as yet nothing to attach; the beneficiary has not "earned" its right to the proceeds. *See, e.g., Ferrostaal Metals Corp. v. S.S. Lash Pacifico,* 652 F.Supp. 420 (S.D.N.Y.1987); *Supreme Merchandise Co., supra; Diakan Love S.A. v. Al–Haddad Bros. Enter., Inc.,* 584 F.Supp. 782 (S.D.N.Y.1984); *Sisalcords Do Brazil, Ltd. v. Fiacao Brasiliera De Sisal,* 450 F.2d 419 (5th Cir.1971), *cert. denied,* 406 U.S. 919, 92 S.Ct. 1771, 32 L.Ed.2d 118 (1972). If it waits too long, until after the beneficiary has notified the issuer of an assignment of proceeds, the attachment will also fail. *See supra.* Thus, the creditor must act between the time the beneficiary produces the documents and the time it notifies the issuer of the assignment. In this case, there was no such interim period, because Soysen presented the draft indicating the assignment at the same time it produced the documents satisfying the terms of the Letter of Credit. The same result would occur if the assignment had been perfected *prior* to the time the beneficiary satisfies the conditions of the credits. *See Furness Withy, Inc., supra.*

ed in interpleader cases in favor of the innocent stakeholder. *See, e.g., A/S Krediit Pank v. Chase Manhattan Bank,* 303 F.2d 648, 649 (2d Cir.1962).

Attorney's fees are granted in Algemene's favor against HTC and Barrow, but only to the extent fees were incurred in the filing, service and litigation of the interpleader. Algemene's submissions show that some portion of the fees was incurred in analysis of the merits of the competing claims. Ex. E. The award of fees does not cover these expenditures.

### Conclusion

Algemene's motion for discharge from this interpleader action and relief from further liability under 28 U.S.C. § 2361 is granted.

Egebank's motion to be excused for the late filing of its motion is granted.

Summary judgment is granted in favor of Egebank. The crossmotion of Ballard and HTC is denied. Egebank is entitled to payment of the proceeds of the Letter of Credit and may withdraw from the court registry the funds deposited by the interpleader plaintiff.

Costs are awarded against HTC and Barrow in favor of Algemene, Soysen and Egebank. Attorney's fees are awarded to Algemene against HTC and Barrow, to the extent stated above.