WEYERHAEUSER COMPANY, Plaintiff,

v.

ISRAEL DISCOUNT BANK OF NEW
YORK and Crestmanor Homes,
Inc., Defendants.

No. 92 Civ. 0431 (JFK).

United States District Court,
S.D. New York.

Oct. 28, 1994.

Opinion Denying Reargument,
but Correcting Decision
Dec. 7, 1994.

Kronish, Lieb, Weiner & Hellman, New
York City (Nicole Nelson Goluboff, of coun-
sel), for plaintiff.

Hahn & Hessen, New York City (John P.
McCahey, David M. Posner, of counsel), for
defendant Israel Discount Bank of New
York.

### OPINION AND ORDER

KEENAN, District Judge:

Before the Court is the motion of defen-
dant Israel Discount Bank of New York
("IDB") for summary judgment pursuant to
Rule 56(b) of the Federal Rules of Civil
Procedure ("FRCP"). In this action, Weyer-
haeuser Company alleges that IDB, as advis-
ing bank under a letter of credit from non-
party Bank Leumi Le–Israel ("Leumi"),
failed to honor a partial assignment of pro-
ceeds to Weyerhaeuser made by defendant,
Crestmanor Homes, Inc. ("CHI"), the benefi-
ciary of the letter of credit, despite having
notice of the partial assignment. For the
reasons set forth below, IDB's motion is
denied.

### BACKGROUND

This is a diversity case. Plaintiff, Weyer-
haeuser Company, is a building materials
distribution business incorporated in the
state of Washington, which is also the loca-
tion of its principal place of business. Defen-
dant IDB is a New York banking corpora-
tion, whose principal place of business is in
the state of New York. The other defendant,
CHI, which is currently in bankruptcy pro-
ceedings in West Virginia,[1] is incorporated

1. Given CHI's bankruptcy, this action is stayed    as against CHI.

and has its principal place of business in the state of West Virginia. The amount in dispute exceeds $50,000.

In October of 1991, CHI owed Weyerhaeuser approximately $1.5 million for building materials used by CHI to construct modular homes in Israel. Sometime after October 24, 1991, Dan Sundahl, the president of CHI, prepared and executed a letter from CHI to IDB, stating that CHI had entered into a security agreement with Weyerhaeuser pursuant to which CHI irrevocably assigned to Weyerhaeuser a 48.75 percent interest in the proceeds of a letter of credit that Leumi had issued to CHI to secure the payment of modular homes sold by CHI in Israel. *See* IDB Exhibit D. The letter, which was backdated to October 4, 1991, was addressed to Moshe Rosenwasser, the Vice–President of IDB, and requested that IDB acknowledge acceptance of the instructions and return a signed copy of the letter to CHI. *See id.* In its answer to the complaint, submitted prior to its bankruptcy, CHI denied making the Security Agreement and the Sundahl letter. *See* IDB Exhibit X, at 1–2.

The letter of credit referenced in the Sundahl letter was issued by Leumi on October 15, 1991 to CHI, as beneficiary, in the sum of $1,613,040. IDB, acting as the advising bank under the letter of credit, received a telex transmission from Leumi on October 15, 1991 that set forth the terms, conditions and instructions for the letter of credit. *See* IDB's 3(g) Statement ¶ 4. Plaintiff claims that this telex was the actual letter of credit issued by Leumi and that IDB possessed this document at all relevant times. IDB, however, asserts that the actual letter of credit was comprised of two documents: (1) the original advice of credit, which IDB prepared on October 23, 1991 after authenticating Leumi's telex and which bore the original signature of one IDB officer; and (2) an attached copy of the telex received from Leumi. *See* Plaintiff's 3(g) Statement ¶ B(a); IDB's 3(g) Statement ¶ 7. According to IDB, these two documents were sent to CHI after the first payment under the letter of credit on November 7, 1991. *See* IDB's 3(g) Statement ¶ 7; Rosenwasser Affidavit ¶ 6; Marin Affidavit ¶ 8. IDB further asserts that CHI was required

to present the advice of credit, along with the appropriate shipping documents, when seeking payments under the letter of credit. *See* IDB's 3(g) Statement at ¶ 10.

CHI apparently never sent the Sundahl letter to either IDB or Leumi. Instead, plaintiff claims that it sent a copy of the Sundahl letter to Moshe Rosenwasser at IDB under cover of letter on November 8, 1991, the day after IDB distributed the first payment on the letter of credit to CHI. *See* IDB Exhibit E. According to plaintiff, the Sundahl letter was sent by overnight mail and was received by IDB on November 9, 1991. Plaintiff has submitted the overnight mail receipt that reflects that a package was delivered to IDB on November 9, 1991. *See* Weyerhaeuser Exhibit 9. IDB admits to having received an overnight mail package from Weyerhaeuser on November 9, 1991, but denies having ever received the Sundahl letter. *See* Zorn Affidavit ¶ 18; IDB Exhibit G.

The second payment on the letter of credit occurred on December 3, 1991 for $343,-180.00. According to IDB, CHI never mentioned an assignment to plaintiff, but instead directed IDB to wire the proceeds into its account at Old National Bank ("ONB") in the same manner as the first payment. After authorization from Leumi, IDB followed CHI's direction, sending CHI the second payment.

In a letter dated December 20, 1991, plaintiff protested to CHI that its diversion of the second payment to itself had placed it in default of the security agreement. *See* IDB Exhibit M. IDB was not copied on the letter. *See id.* According to IDB, it first received notice of plaintiff's claim to the money from a letter sent to it by plaintiff, dated December 30, 1991, in which plaintiff stated that IDB had yet to acknowledge receipt of the Sundahl letter. *See* IDB Exhibit N. On December 31, 1991, IDB responded to plaintiff, asserting that it had never received a copy of the Sundahl letter, and that it would not discuss with plaintiff any transaction in which plaintiff was not a participant. *See* IDB Exhibit O.

The third and final payment under the letter of credit, for $343,100.00, was made on

January 7, 1992, after CHI directed IDB by fax to wire the proceeds to CHI's account at ONB. Again, CHI did not mention any assignment to plaintiff. *See* IDB Exhibit P. On January 9, 1992, plaintiff wrote IDB demanding that all future payments under the letter of credit be made in accordance with the Sundahl letter. *See* IDB Exhibit Q. That same day, IDB responded to plaintiff's letter stating that IDB had no record of receiving the Sundahl letter and that plaintiff should direct its concerns to CHI. *See* IDB Exhibit R.

Leumi has since informed IDB that it will not make any further payments to CHI under the letter of credit. It is not disputed that three payments were approved by Leumi and disbursed to CHI through IDB under this letter of credit: $342,451.07 on November 7, 1991; $343,180.00 on December 3, 1991; and $343,100.00 on January 7, 1992.

Plaintiff's amended complaint seeks a declaratory judgment that since November 8, 1991, it has held a perfected security interest in 48.75 percent of the proceeds of the second and third payments under the letter of credit, and thus is entitled to 48.75 percent of these two payments, less $138,861.56, which CHI apparently paid to plaintiff from the second payment. Plaintiff's amended complaint also sets forth causes of action for tortious and intentional interference with contract and prima facie tort.

### DISCUSSION

A motion for summary judgment may be granted under FRCP 56 if the entire record demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). When viewing the evidence, the Court must "assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in its favor." *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 177 (2d Cir.1990); *see Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir.1989). In making this determination, the district court may not resolve issues of fact; it may only ascertain whether such issues are present. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir. 1987).

While conceding that issues of fact exist as to whether or not IDB received notice of the purported assignment between plaintiff and CHI, IDB asserts that it is entitled to summary judgment because the assignment was ineffective under applicable law and no evidence suggests that IDB, acting with disinterested malevolence, prevented the assignment from occurring.

The letter of credit states that it is governed by the Uniform Customs and Practices for Documentary Credits, 1983 Revision, International Chamber of Commerce Publication No. 400 [hereinafter, the "UCP"]. Analogies to the New York Uniform Commercial Code ("UCC") may be drawn, but only to the extent that it does not conflict with the UCP. *See Algemene Bank Nederland, N.V. v. Soysen Tarim Urunleri Dis Ticaret Ve Sanayi, A.S.*, 748 F.Supp. 177, 181 (S.D.N.Y.1990). The UCP, however, is "silent on the issue of when an assignment of proceeds vests," and therefore Section 5–116 of the UCC is deemed to govern the assignment of letters of credit. *Id.* at 183; *see* N.Y.U.C.C. § 5–116(2). UCC Section 5–116(2) provides that an assignment of the proceeds from a letter of credit becomes effective once (a) the letter of credit or advice of credit is delivered to the assignee and (b) the "issuer" receives notice of the assignment "signed by beneficiary which reasonably identifies the credit involved in the assignment and contains a request to pay the assignee." *See* N.Y.U.C.C. § 5–116(2)(a)–(b). Even after the issuer receives what appears to be a valid notification, however, it still may properly refuse to pay the purported assignee until the issuer is shown the letter of credit or advice of credit. *See* N.Y.U.C.C. § 5–116(2)(c).

IDB argues that the alleged assignment was never effectuated because CHI failed to deliver either the letter of credit or the advice of credit to plaintiff, as required by UCC Section 5–116(2)(a). In addition, IDB claims that, under UCC Section 5–116(2)(c), it was permitted to refuse payment to plaintiff and required to pay CHI because plaintiff did not

present either the letter of credit or the advice of credit, while CHI did present the advice of credit. Plaintiff, on the other hand, while conceding that neither the letter of credit nor the advice of credit was ever delivered to it, *see* Zorn Affidavit ¶ 38, argues that the operative document for purposes of UCC Section 5–116(2) was the original telex sent by Leumi to IDB, which indisputably held this telex in its files. Plaintiff further argues that IDB held the letter of credit as bailee for CHI and, after notice of the assignment, for plaintiff, by operation of law, *see* N.Y.U.C.C. § 9–305, to the extent of its 48.75 percent interest in the proceeds. Thus, according to plaintiff, the delivery and presentment requirements of UCC Section 5–116(2)(a) and (c) were met in this case.

■ UCC Section 5–116(2)(a) states that the delivery of either the letter of credit or the advice of credit to the assignee will perfect the assignee's security interest and effectuate the assignment. *See* N.Y.U.C.C. § 5–116(2)(a). This subsection is meant, in part, to protect against assignor double-dealing. *See* James J. White & Robert S. Summers, *Uniform Commercial Code* § 19–9, at 872 (3d ed. 1988). The statute and caselaw are silent as to which document must be delivered when the advising bank holds the original letter of credit issued by the paying bank and issues an advice of credit to the beneficiary.[2] This Court holds that, for purposes of the UCC Section 5–116(2)(a) delivery requirement, if the advising bank issues a written advice to the beneficiary of a letter of credit as to the issuance of the letter of credit, and if the advising bank requires the beneficiary to present the written advice each time it seeks to draw on the letter of credit, then the written advice is the document that must be delivered to the assignee in order to secure payment under the letter of credit. *See* J. Dolan, *The Law of Letters of Credit* ¶ 10.04[b], at 10–24 (2d ed. 1991).

Plaintiff argues that such a holding would put UCC Section 5–116(2)(a) in conflict with Article 12(b) and (c) of the UCP. The Court disagrees. As mentioned above, the UCP is silent as to the handling of the assignments of letters of credit. *See Algemene Bank*, 748 F.Supp. at 183. Article 12(b) and (c) of the UCP speak to the establishment of the credit, which is not at issue here. These articles state that a teletransmission is the operative letter of credit if the telex states that it is subject to the UCP and if it lacks a statement such as "full details to follow" or that a forthcoming mail confirmation is to be the operative instrument. *See* UCP, art. 12(b)–(c). Article 12(a) of the UCP clearly shows that Article 12(b) and (c) do not preclude an advising bank from issuing a written advice of credit. *See* UCP, art. 12(a). Thus, under the UCP, the Leumi telex operated to establish Leumi's credit with regards to CHI, the beneficiary, prior to CHI's receipt of the advice of credit—an alteration of the rule concerning the establishment of credit under the UCC. *See* N.Y.U.C.C. § 5–106(1)(b) (requiring the beneficiary's receipt of advice of credit to establish the beneficiary's right to credit); James J. White & Robert S. Summers, *Uniform Commercial Code* § 19–4, at 828 (3d ed. 1988).

Nevertheless, IDB's issuance of a written advice of credit did not affect the establishment of the credit between Leumi and CHI; instead it created the document that CHI was required to present to IDB in order to secure payment under the Leumi letter of credit. Had no such advice been issued, then the telex itself would have presumably been the document to be delivered under Section 5–116(2)(b). *See* J. Dolan, *The Law of Letters of Credit* ¶ 10.04[b], at 10–24 (2d ed. 1991).

All credit involves risk. The delivery and presentment requirements of UCC Section 5–116(2) are meant to protect the assignor, assignee, and the paying bank from the type of fraud that plaintiff is alleging to have occurred in this case. Plaintiff could have

---

**2.** Contrary to plaintiff's contention, *Union Planters National Bank v. World Energy Systems Associates*, 816 F.2d 1092 (6th Cir.1987), is not on point. In *Union Planters*, the original letter of credit, which was held by the advising bank, was one of the documents that the beneficiary was required to present in order to obtain payment under the letter of credit. *See id.* at 1094. In the present case, IDB alleges that CHI, the beneficiary, was required to present the advice of credit, which CHI allegedly held, and not the original telex.

lessened the risk of CHI receiving the entire payment under the letter of credit by requiring delivery of the advice of credit. *See* 6A William D. Hawkland, *Uniform Commercial Code Series* § 5–116:02, at 228–29 (cum. supp. June 1993). Although partial assignments may preclude delivery of the actual document, given that at least two parties are entitled to the letter of credit proceeds, plaintiff and CHI could have created a bailment relationship with IDB that would have satisfied UCC Section 5–116(2)(a). *See Union Planters National Bank v. World Energy Systems Assocs.*, 816 F.2d 1092, 1096 (6th Cir.1987).

■ Despite the Court's holding concerning the delivery of the advice of credit, summary judgment is still inappropriate in this case because plaintiff has shown that a material issue of fact exists as to whether or not CHI held the advice of credit and was required to present the document each time it sought payment under the letter of credit. IDB claims that it sent the advice of credit to CHI after the November 7, 1991 payment, and that it required CHI to present the advice of credit in order to secure payment under the letter of credit. *See* IDB's 3(g) Statement ¶ 10; Rosenwasser Affidavit ¶ 6; Marin Affidavit ¶¶ 4, 8. After noting the amount of each payment on the advice of credit, IDB contends that it returned the written advice of credit to plaintiff after each payment. *See* IDB's 3(g) Statement ¶ 10; Marin Affidavit ¶ 8. Plaintiff, however, points out the inconsistencies in the deposition testimony of IDB employees, *see* Plaintiff's Opposition Brief at 11 & n. 8, and suggests that IDB, not CHI, held the advice of credit. If this can be proved, then plaintiff may conceivably show that IDB held the document as a bailee to CHI and—following the November 9, 1994 notification—to plaintiff because IDB's consent to a bailment with plaintiff would not be required:

> [W]here the collateral ... is held by a bailee, the time of perfection of the security interest ... is when the bailee receives notification of the secured party's interest: this rule rejects the common law doctrine that it is necessary for the bailee to attorn

to the secured party or acknowledge that he now holds on his behalf.

N.Y.U.C.C. § 9–305, comment 2.

### CONCLUSION

For the reasons set forth above, IDB's motion for summary judgment is denied. A ready-for-trial date has been set for December 11, 1994. The Court's pre-trial requirements are enclosed.

**SO ORDERED.**

### MEMORANDUM OPINION AND ORDER ON REARGUMENT

Before the Court are the motion of Defendant, Israel Discount Bank of New York ("IDB"), pursuant to Fed.R.Civ.P. 59(e) and Local Civil Rule 3(j) for reargument and the motion of Plaintiff, Weyerhaeuser Company, pursuant to Fed.R.Civ.P. 60(a) for correction. For the reasons stated below, Defendant's motion is denied, and Plaintiff's motion is granted.

*Discussion*

The standards controlling a motion to reargue and a motion to amend a judgment are set forth in Local Rule 3(j) and Fed.R.Civ.P. 59(e). *See In re New York Asbestos Litigation*, 847 F.Supp. 1086, 1141 (S.D.N.Y.1994); *Fulani v. Brady*, 149 F.R.D. 501, 503 (S.D.N.Y.1993), *aff'd*, 35 F.3d 49 (2d Cir. 1994); *Morser v. AT & T Information Sys.*, 715 F.Supp. 516, 517 (S.D.N.Y.1989). Reargument is appropriate only where the court has "overlooked controlling decisions or factual matters put before it on the underlying motion." *In re New York Asbestos Litigation*, 847 F.Supp. at 1141; *see Fulani*, 149 F.R.D. at 503.

Defendant IDB does not submit that the Court overlooked any controlling decision. Defendant asserts only that the court "overlooked that the deposition testimony of IDB contains no inconsistencies" as to the possession and presentment of the Advice of Credit. *See* Def.'s Mem. at 3. Rather than illustrate a matter of undisputed fact that the court neglected to address, this assertion is nothing more than an objection to the Court's finding that the testimony of IDB's employ-

ees contains inconsistencies which raise material issues of fact.

Specifically, in its Opinion and Order dated October 28, 1994 (the "Opinion"), the Court identified two areas of inconsistency. The Court held that "summary judgment is inappropriate in this case because plaintiff has shown that a material issue of fact exists as to whether or not [Defendant Crestmanor Homes Inc. ("CHI") ] [ (1) ] held the advice of credit and [ (2) ] was required to present the document each time it sought payment under the advice of credit." *See* Opinion & Order, Oct. 28, 1994, at 46.

Defendant points to no unexplored areas of the prior testimony or exhibits to clarify either point. As to IDB's possession of the Advice of Credit, the testimony is unclear as to whom at IDB, if anyone, transmitted the Advice of Credit to CHI, as IDB claims. Some of the testimony suggests that if such transfer occurred, it was effected by Mr. Rosenwasser, an IDB loan officer, while other testimony suggests someone in either the Letter of Credit Department or the Credit Department.

The additional indefiniteness in the testimony concerning presentment of the Advice further muddies the issue of whether IDB ever transmitted the Advice to CHI. The testimony is unclear as to whom at IDB, if anyone, received the Advice from CHI prior to issuing the second and third payments, and as to whom, if anyone, returned the Advice to IDB after each transaction.

Because Defendant has failed to present any factual showing that the Court overlooked in reaching its original finding that there are inconsistencies in the testimony of IDB employees creating material issues of fact for trial, the Court hereby denies Defendant's motion to reargue.

Plaintiff, Weyerhaeuser Company, cross-moves pursuant to Fed.R.Civ.P. 60(a) for correction of the portion of the Opinion noting that Plaintiff seeks a judgment that it is entitled to "48.75 percent of [the first and second] payments [under the Letter of Credit], *less $138,861.56, which CHI apparently paid to plaintiff from the second payment.*" Opinion & Order, Oct. 28, 1994, at —— (em-

phasis added). Plaintiff claims the $138,861.56 payment was intended to reduce CHI's large outstanding receivable with IDB and not, as Defendant claims and as the Court's opinion suggests, a portion of IDB's entitlement under the Letter of Credit. The Court notes only that Plaintiff admitted in its original complaint the receipt of $138,861.56 from CHI. *See* Compl. at 4. Inasmuch as clarification is necessary, the Court hereby grants Plaintiff's motion for correction. The Court amends its earlier Opinion and Order to reflect no determination as to whether the funds constituted payment under the Letter of Credit. That issue is properly left for determination by the trier of fact upon full presentation by the parties.

### Conclusion

For the reasons discussed above, Defendant's motion for reargument is denied, and Plaintiff's motion for correction is granted as indicated. Parties are reminded that this action has been transferred to the active docket of Judge Koeltl, and that all further communications should be directed to Judge Koeltl's chambers.

**SO ORDERED.**